# United States Court of Appeals
## For the First Circuit

No. 00-2261

MARIA ANTONIA CRUZ, ETC., ET AL.,

Plaintiffs, Appellants,

v.

STEVEN J. FARQUHARSON, AS DISTRICT DIRECTOR OF THE BOSTON
DISTRICT OF THE IMMIGRATION AND NATURALIZATION SERVICE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Selya and Boudin, Circuit Judges,

and Schwarzer,* Senior District Judge.

Cristóbal Bonifaz, with whom John C. Bonifaz and Law Offices
of Cristóbal Bonifaz were on brief, for appellants.
Papu Sandhu, Senior Litigation Counsel, Office of
Immigration Litigation, Civil Division, U.S. Dep't of Justice,
with whom Stuart E. Schiffer, Acting Assistant Attorney General,
and Emily Anne Radford, Assistant Director, Office of
Immigration Litigation, were on brief, for appellee.

June 12, 2001

_____
*Of the Northern District of California, sitting by designation.

**SELYA, Circuit Judge.** This case involves the manner in which the Immigration and Naturalization Service (INS) processes (or fails to process) petitions by citizens requesting permanent residence in the United States for their alien spouses. These importunings are commonly called "immediate relative" visa petitions (IRV petitions). The pertinent statute is 8 U.S.C. § 1154(a) (1994 & Supp. IV 1998), pursuant to which a United States citizen may file an IRV petition on behalf of an alien spouse to classify the spouse as a person who can apply forthwith for an immigrant visa. Id.; see also id. § 1151(b)(2)(A)(i) (defining "immediate relatives" to include spouses). The law assigns to the Attorney General the duty to decide whether a petition reveals facts sufficient to allow the alien spouse to satisfy the definition of "immediate relative." Id. § 1154(b). After conducting an investigation, "the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative . . . approve the petition." Id.

Such approval clears the way for the affected alien spouse to seek an adjustment of his or her status to that of a lawful permanent resident of the United States. See id. § 1255(a). To so qualify, the alien spouse must make a four-fold

-3-

showing: (1) that he or she was lawfully admitted into the United States; (2) that he or she has duly applied for adjustment of status; (3) that he or she is eligible to obtain permanent residence in the United States; and (4) that, as a result of the granting of an IRV petition or otherwise, an immigrant visa is immediately available. See id.; see also Ruckbi v. INS, 159 F.3d 18, 19 (1st Cir. 1998). Because "sham" marriages historically have posed a problem in connection with IRV petitions, the INS may impose certain conditions on approval of adjustment-of-status applications involving recently married alien spouses. See 8 U.S.C. § 1186a(a)(1), (g)(1) (stipulating that if the marriage occurred within twenty-four months next preceding the date of adjustment of status, permanent resident status will be granted provisionally); see also id. § 1186a(c), (d)(2) (describing procedure for converting conditional status to unconditional status once two years have elapsed from date of adjustment).

In this case, four named plaintiffs, all American citizens, filed IRV petitions with the Boston office of the INS on behalf of their alien spouses. The spouses, also named plaintiffs, simultaneously applied for permanent residence. The INS district director temporized, neither granting nor denying any of these requests.

By mid-1999, these filings — which had been perfected on various dates in 1997 — still lay fallow. The eight plaintiffs, frustrated by the unexplained delay, sued the district director on August 18, 1999. In their complaint, purportedly filed on behalf of themselves and "[a]ll persons within the jurisdiction of the Boston Office of INS who have [had] adjustment of status applications pending in the Boston Office of INS for more than one year," the plaintiffs prayed, inter alia, for an order requiring the district director to grant or deny residency to the named alien spouses and comparably situated members of the putative class within twelve months of the date on which properly completed IRV petitions and adjustment-of-status applications had been filed.[1] The complaint also alleged that the INS had engaged in a variety of pernicious practices and sought an order enjoining the district director from continuing to conduct his office in that manner. The practices cited by the plaintiffs (which are, at this point, merely allegations) included, inter alia, (i) making status determinations vis-à-vis alien spouses on racially discriminatory bases, and (ii) effectively curtailing legal

---

[1]The twelve-month period appears to be snatched out of thin air. Moreover, such a timetable obviously has no bearing with respect to the named plaintiffs, whose petitions and applications were pending for upwards of twenty-two months when they started suit.

immigration into the United States by "shelving" adjudication cases.

The complaint brought a swift response. Within twenty-five days of the filing date, the district director granted the residency status sought by one couple and began actively processing the IRV petitions and adjustment-of-status applications of the remaining named plaintiffs. By October 29, 1999 — roughly ten weeks after suit had been started — the district director had granted all the named plaintiffs' IRV petitions and had approved permanent resident status for the four alien spouses.

Pointing to these changed circumstances, the district director moved to dismiss the complaint on mootness grounds. The plaintiffs opposed this motion and, on December 1, 1999, moved for class certification. See Fed. R. Civ. P. 23. The district court granted the district director's motion and, accordingly, denied class certification as moot. This appeal ensued.

We need not tarry. The Constitution confines the federal courts' jurisdiction to those claims which embody actual "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. This requirement must be satisfied at each and every stage of the litigation. Spencer v. Kemna, 523 U.S. 1, 7 (1998). When

a case is moot — that is, when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome — a case or controversy ceases to exist, and dismissal of the action is compulsory. See City of Erie v. Pap's A. M., 529 U.S. 277, 287 (2000); United States Parole Comm'n v. Geraghty, 445 U.S. 388, 395-96 (1980); R.I. Ass'n of Realtors v. Whitehouse, 199 F.3d 26, 34 (1st Cir. 1999).

Here, the named plaintiffs received complete relief from the district director no later than October 29, 1999. By that date, the INS had adjudicated and approved the IRV petitions filed by all four named citizen plaintiffs and the concomitant applications for adjustment of status filed by their alien spouses. From that point forward, there was no longer a live controversy between the plaintiffs and the district director, and the plaintiffs — having previously received favorable administrative action — lacked any cognizable stake in the outcome of the proceedings. Thus, the case had become moot. See County of Los Angeles v. Davis, 440 U.S. 625, 631-34 (1979); Powell v. McCormack, 395 U.S. 486, 496-97 (1969); Thomas R.W. v. Mass. Dep't of Educ., 130 F.3d 477, 479 (1st Cir. 1997). Nothing that transpired between October 29, 1999, and June 22, 2000 (the date on which the district court ruled) filled this void: no new plaintiffs tried to intervene, and the named

-7-

plaintiffs made no effort to amend their complaint to add new parties. Thus, it seems difficult to fault the district court for dismissing the case.

The plaintiffs try. They seek to deflect the force of this reasoning in two ways. We examine their handiwork.

The plaintiffs first argue that a different, more relaxed conception of mootness should apply because this suit was intended all along to be a class action. In maintaining this stance, they rely heavily on the Supreme Court's decision in Sosna v. Iowa, 419 U.S. 393 (1975). Their reliance is mislaid.

To be sure, the Sosna Court held that even though the named plaintiff's individual claim had become moot after proper certification of a class, the class action itself was not rendered moot. Id. at 400-01. The Court reasoned that when the district court ordered certification, the class acquired a separate legal status that survived the dissipation of the named plaintiff's claim. Id. at 399. Here, however, the district court had not certified a class at the time the named plaintiffs' claims became moot — indeed, the plaintiffs had not yet moved for class certification at that juncture.

This is a dispositive difference. Despite the fact that a case is brought as a putative class action, it ordinarily

-8-

must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved.[2]  See Arnold v. Panora, 593 F.2d 161, 164 (1st Cir. 1979); Cicchetti v. Lucey, 514 F.2d 362, 365-66 (1st Cir. 1975); see also Ahmed v. Univ. of Toledo, 822 F.2d 26, 27 (6th Cir. 1987); Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th Cir. 1987); Inmates of Lincoln Intake & Det. Facility v. Boosalis, 705 F.2d 1021, 1023 (8th Cir. 1983).[3]  Only when a class is certified does the class acquire a legal status independent of the interest asserted by the named plaintiffs — and only then is the holding in Sosna implicated.

The plaintiffs next seek to avoid the mootness bar by asseverating that the questions presented in their complaint are "capable of repetition, yet evading review."  S. Pac. Terminal

---

[2]There is a narrow exception to this principle, exemplified by Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975).  We discuss this exception infra.

[3]We note that one court has taken a somewhat more expansive view, concluding that a class action may endure even though the named plaintiff's claims have become moot, as long as a motion for class certification is pending at the time that mootness overtakes the plaintiff's claims.  See Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 135 (3d Cir. 2000) ("So long as a class representative has a live claim at the time he moves for class certification, neither a pending motion nor a certified class action need be dismissed if his individual claim subsequently becomes moot.").  Because no such motion was pending when the claims of the named plaintiffs in this case became moot, we have no occasion to consider the correctness of the Third Circuit's singular rule.

<u>Co.</u> v. <u>ICC</u>, 219 U.S. 498, 515 (1911).  This asseveration fastens upon a recognized, albeit narrow, exception to general principles of mootness.  <u>E.g.</u>, <u>Caroline T.</u> v. <u>Hudson Sch. Dist.</u>, 915 F.2d 752, 757 (1st Cir. 1990).  We have warned, however, that "the exception is not a juju, capable of dispelling mootness by mere invocation."  <u>Oakville Dev. Corp.</u> v. <u>FDIC</u>, 986 F.2d 611, 615 (1st Cir. 1993).  In cases — like this one — in which no class has been certified, the exception pertains only if there is some demonstrated probability that the same controversy, involving the same parties, will reoccur.  <u>See</u> <u>Murphy</u> v. <u>Hunt</u>, 455 U.S. 478, 482 (1982); <u>Weinstein</u> v. <u>Bradford</u>, 423 U.S. 147, 149 (1975).

On the record as it stands, the plaintiffs' case does not fit within this niche.  Unlike pregnant women who are likely to conceive again, <u>see</u> <u>Roe</u> v. <u>Wade</u>, 410 U.S. 113, 125 (1973), or handicapped children who are virtually certain to require placement in successive school years, <u>see</u> <u>Caroline T.</u>, 915 F.2d at 757, the plaintiffs have not shown, or even alleged, that they have any prospect of seeking the same relief anew.[4]

_____

[4]The "same parties" requirement — the requirement that a party show that she is likely to experience a future reoccurrence of the mooted dispute — is sometimes expressly stated, <u>e.g.</u>, <u>Murphy</u>, 455 U.S. at 482, sometimes not, <u>e.g.</u>, <u>Roe</u>, 410 U.S. at 125.  Arguably, some cases may have diluted this requirement.  <u>See</u>, <u>e.g.</u>, <u>id.</u> (noting that pregnancy often comes more than once to a woman of childbearing age, without inquiring whether Roe herself was likely to become pregnant

-10-

Moreover, it is hard to visualize why they would have any need to do so.  The citizen plaintiffs' IRV petitions have been granted, and their alien spouses — the only other named plaintiffs — have been reclassified as permanent residents.  These are one-time requirements, and the plaintiffs cannot credibly argue that they are likely to be exposed afresh to the same sort of bureaucratic gridlock that drove them to the courthouse door on this occasion.  It follows that the plaintiffs' claims are not "capable of repetition" in the requisite sense.[5]  See, e.g., Spencer, 523 U.S. at 18 (holding that the petitioner had not demonstrated a reasonable likelihood that he would again be paroled and have his parole revoked);

---

again); see also Erwin Chemerinsky, Federal Jurisdiction § 2.5.3 (3d ed. 1999); 13A Charles Alan Wright et al., Federal Practice and Procedure § 3533.8 (2d ed. 1984 & Supp. 2001).  In the abstract, this might be an interesting subject for a law review article.  Here, however, in view of the plaintiffs' inability to demonstrate that the mooted dispute is likely to elude review, see text infra, it is unnecessary for us to speculate on how strictly the Supreme Court will enforce the "same parties" requirement in future cases.

[5]The plaintiffs seemingly concede this point.  They argue instead that the district director's handling of IRV petitions imperils other citizens who have a right to seek permanent resident status for their alien spouses as well as other alien spouses.  Even if these predictions of imminent peril are well-founded — a matter on which we take no view — they are irrelevant:  "the possibility . . . that others may be called upon to litigate similar claims does not save a particular plaintiff's case from mootness." Oakville Dev., 986 F.2d at 615 (citing, inter alia, Lane v. Williams, 455 U.S. 624, 634 (1982)).

Murphy, 455 U.S. at 482-83 (finding no "reasonable expectation" or "demonstrated probability" that appellant would once again be forced to seek pretrial bail); Oakville Dev., 986 F.2d at 615 (finding it highly unlikely that appellant would secure another mortgage with a federally insured bank that subsequently failed).

In all events, the plaintiffs have not shown at this juncture that the generic types of claims that they seek to pursue are likely to evade review.  To do so would necessitate a showing that the claims are inherently transitory, e.g., Neb. Press Ass'n v. Stuart, 427 U.S. 539, 546-47 (1976), or that there is a realistic threat that no trial court ever will have enough time to decide the underlying issues (or, at least, to grant a motion for class certification) before a named plaintiff's individual claim becomes moot, e.g., Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975).  The record in this case reflects no such showing.

To be sure, the plaintiffs say that their own experience — the INS did nothing with their petitions and applications for over twenty-two months, and then moved with seemingly unaccustomed alacrity once suit was started — comprises the necessary showing.  But the plaintiffs' experience, in and of itself, constitutes too frail a foundation

to support the conclusion that they would have us draw.  One swallow does not a summer make, and we have no acceptable basis to conclude, without a more substantial factual predicate, that the INS has devised a scurrilous pattern and practice of thwarting judicial review by allowing IRV petitions and associated alien spouse applications to languish and then, when and if a suit ensues, adjudicating them quickly to ensure that no federal court ever will be in a position either to resolve the underlying issues or to rule on a class certification motion.  We hold, therefore, that the plaintiffs have not shown, on this exiguous record, that the claims asserted are likely to evade meaningful judicial review.[6]  See Rocky v. King, 900 F.2d 864, 870-71 (5th Cir. 1990) (discerning no sufficient indication that prison officials would remove from field work every inmate who brought suit to challenge the conditions under which that work was performed); see also Sze v. INS, 153 F.3d 1005, 1008 (9th Cir. 1998) (rejecting assertion that litigation had spurred

---

[6]The plaintiffs themselves tell us that there are literally "thousands" of similarly situated individuals who have IRV petitions and/or residency applications pending in the INS's Boston office.  This datum suggests to us a likelihood that the underlying issues here, if diligently pursued by aggrieved parties, are susceptible of resolution in the courts. Cf. Rocky v. King, 900 F.2d 864, 870 (5th Cir. 1990) (concluding that claims were not likely to evade review and attaching significance in that regard to the fact that "[h]undreds of inmates . . . could file a claim identical to that filed by [the named plaintiff]").

INS to process plaintiffs' naturalization applications in favor of theory that INS had acted "in due course, albeit significantly delayed due course").

We need go no further. Although the charges that the plaintiffs levy against the INS are serious, mootness goes to the federal courts' jurisdiction. <u>Iron Arrow Honor Soc'y</u> v. <u>Heckler</u>, 464 U.S. 67, 70 (1983) (per curiam); <u>CMM Cable Rep., Inc.</u> v. <u>Ocean Coast Props., Inc.</u>, 48 F.3d 618, 622 (1st Cir. 1995). Its existence here effectively prevented the trial court from digging into the veracity of the plaintiffs' allegations (which, we emphasize, are at this point unproved). Accordingly, we affirm the order for dismissal.

**<u>Affirmed</u>**.