Carlos E. MATOS, et al. Plaintiffs

v.

**Paul O'NEILL, Secretary of the Treasury; et al.
Defendants**

No. CIV. 02–1207(SEC).

United States District Court,
D. Puerto Rico.

Sept. 20, 2002.

**100**

Carlos E. Matos, San Juan, PR, pro se.

Sandra M. Schraiman, U.S. Dept. of Justice, Civil Div., Washington, DC, Camille L. Velez-Rive, U.S. Atty's Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court are Plaintiff's petition for a writ of mandamus (**Docket # 1**), as well as Defendants' motion to dismiss (**Docket # 5**) which was recently supplemented by them (**Docket # 15**). The parties have also filed an opposition (**Docket # 6**) to the motion to dismiss, a reply (**Docket # 11**) and a sur-reply (**Docket # 14**). Having considered all the arguments made by the parties, as well as the relevant case law and statutes, Defendants' motion will be **GRANTED**, Plaintiff's petition for a writ of mandamus will be **DENIED**, and the case will be **DISMISSED WITHOUT PREJUDICE**.

### Factual Background

Plaintiff brings this action against the Secretary of the U.S. Department of the Treasury and the Chief of the Licensing Division of the Office of Foreign Assets Control at the Department of the Treasury (OFAC), seeking a writ of mandamus under 28 U.S.C. § 1361, to compel Defendants to issue him specific licenses for travel to Cuba incident to the importation and exportation of information and informational materials, and to compel them to specify the exact criteria and information that they require to grant Plaintiff the specific licenses. Main Plaintiff Carlos E. Matos is the president and sole shareholder of Plaintiff Forsa Editores, Inc., a for-profit Puerto Rico corporation that, since 1994, publishes and sells Spanish language books. Plaintiff Matos previously applied for, and obtained, four specific licenses from OFAC for travel-related transactions in Cuba, for the purpose of importing and exporting information and informational materials. He previously traveled to Cuba to participate in the Havana International Book Fair, an annual book fair organized by the Cuban Book Guild and the Cuban

Book Institute, both controlled by the Cuban government.

On November 12, 2001, Plaintiff mailed an application for a specific license to travel to Cuba for the purpose of importing and exporting information and informational materials. According to said application, Plaintiff sought to travel to Cuba during the month of February 2002, for ten days, to attend the 2002 book fair. On or about January 12, 2002, Plaintiff received a letter from Mr. Stephen Pinter, Chief of the Licensing Division of the OFAC at the time, stating that his application for a specific license to travel to Cuba was incomplete. Mr. Pinter's letter further informed plaintiff that OFAC would reconsider his application if he provided a "summary of past activities and an agenda for the proposed activities." Plaintiff, on January 14, 2002, sent *via facsimile* the additional information requested. He states that his application was reopened and left pending. This suit followed. In addition, Plaintiff has also requested similar licenses so that he may attend the same book fair in the years 2003, 2004 and 2005.[1]

Defendants, on the other hand argue that Plaintiff's request for a writ of mandamus is moot as to the 2002 and 2003 licenses, and not ripe as to the 2004 and 2005 licenses. We agree, and therefore, need not reach Defendants' arguments concerning the merits of the dispute.

**Applicable Law and Analysis**

 The United States Constitution requires the existence of an actual case or controversy to support federal court jurisdiction. U.S. Const., art. III, Section 2; *Deakins v. Monaghan*, 484 U.S. 193, 199, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988). Furthermore, the actual "case or controversy"

requirement must be satisfied at every stage of the litigation. *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir.2001). Federal courts, therefore, may not render advisory opinions that would have no practical effect on the parties before them. Judicial review of administrative action is similarly constrained by this constitutional principle. *Campesinos Unidos, Inc. v. U.S. Dep't of Labor*, 803 F.2d 1063, 1067 (9th Cir.1986) ("Judicial review of administrative action, like all exercises of the federal judicial power, is limited by the requirement that there be an actual, live controversy to adjudicate").

Courts have developed several doctrines to help establish when such a case or controversy exists. One such doctrine regarding the justiciability of a case is the doctrine of mootness. A case becomes moot " 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome ...' " *Thomas R.W. v. Massachusetts Department of Education*, 130 F.3d 477, 479 (1st Cir.1997) *quoting Boston and Maine Corp. v. Brotherhood of Maintenance of Way Employees*, 94 F.3d 15, 20 (1st Cir.1996).

 In the case before us, Plaintiff's claim for the 2002 license is moot. In November 2001, Plaintiff sought a specific license to travel to Cuba during the month of February 2002, for ten days, in order to attend the 2002 Havana International Book Fair. Plaintiff states that OFAC informed him by letter dated January 8, 2002, that it was unable to issue a license determination because the application was incomplete. OFAC further informed him that it would reconsider his application if he provided "[a] summary of past activities and an agenda for the proposed activities."

---

1. Although Plaintiff did not include any mention of these future licenses in his original complaint, the Court will construe the arguments made by him in his opposition and surreply as amendments to the complaint, and will therefore also address these issues, so as to conclude all litigation surrounding these licenses.

Plaintiff resubmitted his application by letter dated January 14, 2002. Unfortunately for Plaintiff, his application for reconsideration remained pending up until February 2002. The 2002 book fair, therefore, has come and gone, and Plaintiff can no longer obtain the relief sought regarding the 2002 license. Regardless of whether Plaintiff's claim was "live" when he filed his complaint, an actual "case or controversy" must exist between the parties throughout the entire litigation. *Cruz,* 252 F.3d at 533. Regarding the 2002 license, it no longer does.

Plaintiff cannot fit into the narrow exception to the mootness bar by showing that his claim is "capable of repetition, yet evading review," either. *Cruz,* 252 F.3d at 534 *quoting S. Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). This exception applies only where (1) the challenged action is "in its duration too short to be fully litigated prior to its cessation or expiration" and (2) there is a "reasonable expectation" that the same controversy will recur involving the same complaining party." *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam); *Cruz,* 252 F.3d at 534. Plaintiff has not shown that either requirement is met in this case. In fact, Plaintiff has been able to obtain licenses in numerous other occasions, and as we will now discuss, Plaintiff also managed to obtain a license for the 2003 book fair, even though his application had initially been filed incomplete. Therefore, Plaintiff's claim for the 2002 license is **MOOT.**

Plaintiff also submitted an application to OFAC to obtain a specific license for travel to Cuba related to the exportation of information and informational materials in February 2003. The application seeks licenses for himself and two other individuals. By letter dated May 3, 2002, OFAC responded to Plaintiff's request and informed him that they normally will issue a licence authorizing travel-related transactions for Plaintiff's stated purpose of selling or taking orders for existing books that were published in Spain. They further informed him that, before issuing such a license, he had to send OFAC a "detailed description of the activities to be undertaken in Cuba including an itinerary demonstrating the need for the three travelers to engage in transactions in Cuba for the number of days requested."

Plaintiff then diligently sent the information requested to OFAC, within a couple of weeks of receiving their letter. Consequently, OFAC reviewed Plaintiff's application, and as informed in their supplemental to the motion to dismiss, granted the application and issued the requested license. Therefore, Plaintiff has already been given the relief he sought with respect to the 2003 license. Accordingly, said claim has also become **MOOT.**

Lastly, we reach the issue of the future licenses requested by Plaintiff for the book fairs of the years 2004 and 2005. As to these requests, OFAC has informed Plaintiff that it "generally does not issue licenses authorizing travel-related transactions that will not begin within one year of the date of license issuance." Therefore, OFAC stated that it would not issue licenses pertaining to travel in 2004 or 2005 at this time, but suggested that Plaintiff "reapply next year for authorization to engage in travel-related transaction incident to attending" the 2004 and 2005 book fairs.

Based on this, Defendants contend that Plaintiff's claims as to these licenses are not ripe for the Court's review, for there is no final agency action as to the merits of Plaintiff's pending applications, and Plaintiff will suffer no immediate harm from delaying the Court's review. On the other hand, Plaintiff asserts that he should be

excused from exhausting any administrative remedies as to these applications.

As already mentioned, Article III of the U.S. Constitution "confines the federal courts to adjudicating actual 'cases and controversies.'" *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Another of the doctrines which has been developed in this respect is the doctrine of ripeness. The Supreme Court stated in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), that the "basic rationale" for the ripeness principle is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *See also Ernst & Young v. Depositors Economic Protection Corp.,* 45 F.3d 530, 535 (1st Cir.1995).

The ripeness doctrine requires courts "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. 1507. The "fitness for judicial decision" prong examines the court's ability to examine an issue. In the administrative context, a court determines whether the issues presented are based on final agency action. *Lane v. U.S. Dept. of Agriculture,* 187 F.3d 793, 795 (8th Cir. 1999). In this respect, the Supreme Court has warned that "judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise," *F.T.C. v. Standard Oil Co. of Cal.,* 449 U.S. 232, 239, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980); *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), and that such intervention may lead "to piecemeal review

which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *F.T.C.,* 449 U.S. at 239, 101 S.Ct. 488.

The other prong, "the hardship to the parties for withholding court consideration" prong, examines whether "the challenged action creates a 'direct and immediate' dilemma for the parties." *Ernst & Young,* 45 F.3d at 535 (citations omitted). Plaintiff must generally demonstrate both prongs of the test to establish ripeness. *Id.*

■ In the case before us, Plaintiff has not demonstrated that his claims relating to the 2004 and 2005 applications are ripe for review. As to these applications, OFAC has informed Plaintiff that they are untimely, but that he should reapply in the year preceding the year he wishes to travel to Cuba. Accordingly, there has been no final agency action on the merits of these applications which the Court could review. OFAC must be allowed to apply its expertise and decide whether Plaintiff should be issued a specific license that authorizes travel-related expenses for him to travel to Cuba in 2004 and 2005. Contrary to Plaintiff's wishes, the Court cannot take on the agency's job, before they have a chance to do it themselves.

Furthermore, as explained in Defendants' motion, the President of the United States must annually determine whether it is in the national interest to continue the sanctions program against the Cuban government. Pub.L. No. 95–223, § 101(b), 91 Stat. 1625. The Cuban Sanctions program has in fact had numerous changes over the years. *See Regan v. Wald,* 468 U.S. 222, 224–30, 104 S.Ct. 3026, 82 L.Ed.2d 171 (1984). OFAC cannot, and indeed should not have to, predict what the state of the law with regards to Cuba will be in 2004 and 2005.

In addition, Plaintiff has not shown that he will suffer any immediate harm. Plaintiff claims that he suffered hardships when Defendants did not timely issue a licensing determination for 2002. He conclusively states that "this scenario *could* (and indeed, is *likely* to) occur again." (Emphasis in the original). However, Plaintiff submitted his 2002 application in a letter dated November 12, 2002, only a few months prior to his planned travel to Cuba. Because the application did not provide all the information needed by OFAC to make a licensing determination, OFAC informed Plaintiff, by letter dated January 8, 2002, of the necessary additional information. Plaintiff submitted the additional information in a letter dated January 14, 2002. Unfortunately, time ran out before OFAC could issue a decision on Plaintiff's requested license. For Plaintiff's 2003 application, however, OFAC was able to request additional information with more time, and Plaintiff was able to submit it faster. Thus, the agency was able to complete the process and grant the application with over five (5) months to spare. Therefore, as to his applications to travel to Cuba in 2004 and 2005, Plaintiff will not suffer any harm as long as he submits them in a prompt manner, one year before his planned trip, as explained to him by OFAC.

Finally, Plaintiff claims that his complaint is not moot because the "licensing of Plaintiff's travel to Cuba [is] inconsistent" and that "[c]onsistency of agency policy is very much at issue in the instant case." Plaintiff, however, has not stated any kind of specific "policy" by OFAC that he wants to challenge, nor could he, since the regulations clearly provide OFAC with the discretion to request additional information in order to make a proper licensing determination. *See* 31 C.F.R. § 501.801(b)(3). Therefore, since the agency has not been able to exercise its discretion and issue a final determination on the merits of Plain-

tiff's applications for the years 2004 and 2005, his claims as to these applications are not ripe for review and must be **DISMISSED WITHOUT PREJUDICE.**

## Conclusion

For all the reasons discussed above, Plaintiffs' petition for a writ of mandamus is **DENIED**, Defendants' motion to dismiss is **GRANTED**, and the case will be **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**