# United States Court of Appeals
## For the First Circuit

No. 14-1789

BAIS YAAKOV OF SPRING VALLEY,

Plaintiff, Appellee,

v.

ACT, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Jonathan S. Franklin, with whom Robert A. Burgoyne, Mark Emery, Fulbright & Jaworski L.L.P., Robert L. Leonard, Michael K. Callan, and Doherty, Wallace, Pillsbury & Murphy, P.C., were on brief, for appellant.
Aytan Y. Bellin, with whom Bellin & Associates LLC, was on brief, for appellee.

August 21, 2015

**KAYATTA,** **Circuit Judge**.  On certified interlocutory review under 28 U.S.C. § 1292(b), we hold that a rejected and withdrawn offer of settlement of the named plaintiff's individual claims in a putative class action made before the named plaintiff moved to certify a class did not divest the court of subject matter jurisdiction by mooting the named plaintiff's claims.

## I.  Background

ACT, Inc., is a nonprofit Iowa corporation known for developing and administering an eponymous college-entrance examination.  Bais Yaakov of Spring Valley is a private religious high school located outside New York City.  ACT sent Bais Yaakov three unsolicited facsimiles reminding Bais Yaakov of the exam's registration deadline and encouraging Bais Yaakov to volunteer as a test site.  The messages did not provide notice of certain rights of the recipient as required by the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and an analogous New York state law, New York General Business Law § 396-aa ("section 396-aa").  In response, Bais Yaakov filed claims individually and on behalf of three putative classes seeking damages and injunctive relief under the TCPA and section 396-aa.

Several months into the litigation, the parties mutually agreed on a deadline for the class certification motion that Bais Yaakov's complaint announced it would pursue.  Prior to that deadline, ACT tendered to Bais Yaakov an offer for judgment under

Federal Rule of Civil Procedure 68.  ACT offered to pay Bais Yaakov $1,600 for each fax ($1,500 for violating the TCPA and $100 for violating section 396-aa), stating that the figure represented the maximum amount Bais Yaakov could be awarded as damages under each statute.  ACT also offered to be enjoined from sending any additional unsolicited facsimiles to Bais Yaakov, and offered to pay Bais Yaakov's attorneys' fees and costs if the court determined such fees were in order.[1]  ACT's offer concluded by stating that it looked forward to a response "within the time limits established by Rule 68."

Four days after receiving the offer, Bais Yaakov moved for class certification.  Bais Yaakov did not otherwise respond to the offer within fourteen days after it was served, which meant that the unaccepted offer was "withdrawn" by operation of Rules 68(a) and (b).  See Fed. R. Civ. P. 68(a), (b).  ACT never renewed the withdrawn Rule 68 offer.  Instead, a few weeks later, ACT moved to dismiss this lawsuit for lack of subject matter jurisdiction, arguing that its unaccepted and withdrawn Rule 68 offer fully resolved any case or controversy between the parties, rendering Bais Yaakov's claims moot.  U.S. Const. art. III, § 2.

The district court denied ACT's motion to dismiss, holding that an unaccepted offer of judgment did not moot Bais Yaakov's claim.  Bais Yaakov of Spring Valley v. ACT, Inc., 987 F.

---

[1]  Neither pertinent statute contains a fee-shifting provision.

Supp. 2d 124, 128-29 (D. Mass. 2014). Pursuant to 28 U.S.C. § 1292(b), the district court also certified, and we agreed to review, the question of "[w]hether an unaccepted offer of judgment under Rule 68 in a putative class action, when the offer is made before the Plaintiff files a motion to certify the class, moots the Plaintiff's entire action and thereby deprives a court of federal subject matter jurisdiction[.]" In determining that the question to be certified was sufficiently determinative of the outcome to warrant interlocutory review, the district court accepted ACT's contention that the offer, had it been accepted before it was withdrawn, would have provided Bais Yaakov with everything to which it would have been entitled on its individual claim, had it prevailed. The question of whether an unaccepted offer for individual relief in a putative class action moots the action is a question of law that we review de novo. See Manqual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003).

## II. Analysis

State and federal substantive law determine whether a person acquires a cause of action for which damages may be sought in a civil suit. Here, for example, in enacting the TCPA, Congress created a cause of action against ACT for each person to whom ACT sent a fax in violation of the TCPA. See 47 U.S.C. § 227(b)(3). One customarily assumes that the person who acquires a cause of action must bring a lawsuit on his or her own behalf in order to

obtain judicial relief.  In fact, though, the Federal Rules of Civil Procedure provide a variety of procedural vehicles by which a third party may sometimes pursue, on behalf of another person, the judicial relief to which that other person is entitled under applicable substantive law.  Rule 17, for example, provides a vehicle by which various persons or entities may have claims brought for their benefit by others.  <u>See</u> Fed. R. Civ. P. 17(a)(1) (allowing executors, administrators, guardians, bailees, trustees, and others to sue in their own names without joining the person for whose benefit the action is brought).

Rule 23, under which Bais Yaakov seeks to proceed in this case, is another such rule that creates a procedural mechanism for one person's cause of action to be brought by another.  The person who actually brings such a suit does not claim to be an executor, administrator, guardian, bailee, trustee, or the like. Rather, the named plaintiff files a complaint that announces a willingness to sue in a representative capacity, and alleges satisfaction of Rule 23's requirements aimed at determining whether the plaintiff is a proper class representative and whether allowing a representative action would be fair.  <u>See</u> Fed. R. Civ. P. 23(b)(3). The principal intended beneficiaries of this procedural device are persons who have suffered small but similar losses as a result of wrongful conduct by the same defendant or defendants.  <u>See</u> <u>Smilow</u> v. <u>Sw. Bell Mobile Sys., Inc.</u>, 323 F.3d 32, 41 (1st Cir. 2003)

("The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." (citing Amchem Prods., Inc., v. Windsor, 521 U.S. 591, 617 (1997))). For such persons, it will often make little practical sense for any one of them to bring a claim only for herself because, as has been noted in a related context, "only a lunatic or a fanatic sues for" small-dollar claims, AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1761 (2011) (Breyer, J., concurring) (quoting Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004)), particularly when there is no fee-shifting statute that might cover litigation costs that would otherwise dwarf any recovery. But for the existence of Rule 23, or the possibility of action by the government itself, a person or company who wrongfully causes a small amount of damage to each of a large number of persons will likely retain the fruits of that wrongful action.

Plaintiffs seeking to pursue a lawsuit brought in a representative capacity must prove their authorization to bring the lawsuit. For example, a person who is not a guardian cannot sue as such, and so on. Unlike most other representative plaintiffs, however, plaintiffs seeking to proceed as representatives of a class under Rule 23 must show both that they are members of the class and that they adequately represent the class. Fed. R. Civ. P. 23(a).

Against this background, ACT advances a nifty stratagem for defeating motions for class certification: offer only the named plaintiff full payment for its individual claims, and then move to dismiss the suit as moot before the court has a chance to consider whether the plaintiff should be allowed to represent the putative class. In recent years, this stratagem has become a popular way to try to thwart class actions, as evidenced by the cases discussed in this opinion that have grappled with various aspects of the questions presented in this appeal. This stratagem is most readily employed in precisely those cases where Congress has chosen to empower citizens as private attorneys general to pursue claims for well-defined statutory damages, because it is in such cases that defendants can most easily offer an individual plaintiff relief on her personal claim in an amount that indisputably equals the highest amount that the individual plaintiff could recover on her own claim.

In this particular case, ACT's mootness gambit seems to run against the grain of the Supreme Court's holding in Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 340 (1980). In Roper, the Court held that the entry of judgment, over the putative class plaintiffs' objections, of full payment on their individual claims after a motion for class certification had been denied "did not moot their private case or controversy," and that they could still appeal the denial of the certification motion. Id. The

Court gave several possible reasons for its holding. It spoke of the fact that allowing the claims of putative class representatives to be "picked off" would frustrate the objectives of class actions. Id. at 339. The opinion also noted the plaintiffs' "desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails." Id. at 327; see also id. at 338 n.9. More recently, the Supreme Court has instructed us that the actual holding in Roper turned not on policy concerns regarding the use of pick-off attempts to snuff out possible class actions, but rather on the plaintiffs' "ongoing, personal economic stake in the substantive controversy--namely, to shift a portion of attorney's fees and expenses to successful class litigants." Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1532 (2013).

Bais Yaakov argues that it, too, has a continuing economic interest in the controversy: the interest in sharing attorney's fees with other class members, and the interest in a possible incentive award for serving as a lead plaintiff. As for attorney's fees, ACT's offer of judgment called for paying Bais Yaakov's attorney's fees only if "the Court determines Plaintiff would be entitled to recover reasonable attorney' [sic] fees if it prevailed on any of its claims." Bais Yaakov notes that neither the TCPA nor section 396-aa provide for attorney's fees, meaning that no court will make the determination that ACT imposed as a

-8-

condition to paying fees, and that Bais Yaakov accordingly retains an interest in spreading attorney's fees among putative class members. The district court resolved this question against Bais Yaakov on legal grounds that we find unconvincing.[2] On the other hand, as a factual matter, the record does not disclose the terms of Bais Yaakov's agreement with its counsel, so we do not know whether the amount of fees Bais Yaakov must pay would be less if a class were to achieve a recovery. Of course, neither is it clear whether we even need to engage in such a factual inquiry to answer the "continuing economic interest" inquiry under Roper.[3] Our uncertainty does not stop there: we also question whether the possibility of an incentive award is a "continuing economic

---

[2] The district court distinguished Roper on the grounds that Roper involved the appeal of a certification motion that had been denied prior to entry of judgment for the plaintiffs, whereas here no motion had been made at the time of the unaccepted offer. While the timing of the offer may make a difference in this circuit on the question of when a class interest comes into existence, see Cruz v. Farquharson, 252 F.3d 530, 533-34 (1st Cir. 2001), Roper gave no indication that it matters to the inquiry of whether an individual interest is preserved through a plaintiff's continuing economic interest in class certification and litigation. Likewise, Cruz did not run afoul of Roper's holding on the continuing interest in attorney's fees: that argument was not presented in Cruz, likely because the plaintiffs sought only equitable relief, id. at 532-33, and would not have recovered money from which fees might be paid.

[3] While it is not clear from Roper the specificity with which the plaintiffs made their argument for attorney's fees, the Court did indicate that the plaintiffs in their briefs "assert[ed] a continuing obligation" for certain fees and costs already incurred. 445 U.S. at 334 n.6. Here, Bais Yaakov has not actually specified what fees, if any, it would be accountable for if the litigation were to end at this juncture.

interest" under <u>Roper</u>, particularly given that this circuit has never ruled on when, if ever, such awards are valid.[4]

We further note that the precise holding in <u>Roper</u> on which Bais Yaakov relies for this argument has been expressly called into question by the Court in <u>Genesis Healthcare</u>. 133 S. Ct. at 1532 n.5 (questioning whether the holding of <u>Roper</u> remains valid in light of the subsequent decision in <u>Lewis</u> v. <u>Contintental Bank Corp.</u>, 494 U.S. 472, 480 (1990) (stating that an "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.")). The Supreme Court's questioning of <u>Roper</u>'s continuing vitality does not grant us the prerogative of declaring <u>Roper</u> overruled. See <u>Rodriguez de Quijas</u> v. <u>Shearson/Am. Express, Inc.</u>, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls . . . ."); <u>see also</u> <u>United States</u> v. <u>Jiménez-Banegas</u>, No. 13-1980, 2015 WL 3876556, at *5 (1st Cir. June 24, 2015).[5] Nevertheless, it is clear that Bais Yaakov's

---

[4] At least two circuits have held that such arrangements can be appropriate under at least some circumstances. <u>See</u> <u>Cook</u> v. <u>Niedert</u>, 142 F.3d 1004, 1016 (7th Cir. 1998); <u>Staton</u> v. <u>Boeing Co.</u>, 327 F.3d 938, 977 (9th Cir. 2003).

[5] ACT argues that we have nevertheless seized for ourselves the prerogative to overrule <u>Roper</u> by stating that "a party's interest in recouping attorney's fees does not create a stake in the outcome sufficient to resuscitate an otherwise moot controversy."

reliance on <u>Roper</u> stands on shaky ground in light of both <u>Roper</u>'s uncertain future and our uncertainty as to whether <u>Roper</u> "directly controls" these facts, <u>Rodriquez de Quijas</u>, 490 U.S. at 484. We therefore continue our analysis to determine whether we would reach the same outcome even if <u>Roper</u> cannot be relied on. The question thus posed is whether, disregarding Bais Yaakov's claimed interest in shifting fees and a possible incentive award, ACT's tender of a Rule 68 offer mooted Bais Yaakov's case.

Our own decision in <u>Cruz</u> v. <u>Farquharson</u>, 252 F.3d 530 (1st Cir. 2001), narrows the scope of this inquiry by precluding Bais Yaakov from arguing that its interest in having a class certified is enough to defeat ACT's mootness argument. <u>Cruz</u> held that "a putative class action . . . ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved." <u>Id.</u> at 533. Although <u>Cruz</u> also left open the possibility that a putative class action may not be moot if a motion for certification was pending when the plaintiff's individual claims became moot, <u>id.</u> at 534 n.3, no such motion was

<hr />

<u>Diffenderfer</u> v. <u>Gomez-Colon</u>, 587 F.3d 445, 452-53 (1st Cir. 2009) (citing <u>Lewis</u>, 494 U.S. at 480). That statement in <u>Diffenderfer</u> was dictum. The actual holding in that case concerned an interest in fees that could be sustained even when the substantive claim was dismissed as moot. Here, by contrast, the interest in fees can be sustained only if the class action is not dismissed as moot. In any event, until the Supreme Court overrules <u>Roper</u>, we follow <u>Roper</u>.

pending in this case when ACT tendered its Rule 68 offer. In the absence of en banc review, Cruz thus limits this panel's inquiry to determining whether the named plaintiff's individual claim was indeed "fully resolved"--and therefore mooted--by the tendering of the Rule 68 offer.

On this question, Cruz is silent. The Cruz plaintiffs sought to compel the Boston office of the Immigration and Naturalization Service ("INS"), as it was then called, to act on long-delayed visa applications. Id. at 532. When the plaintiffs filed suit, the agency snapped into action and granted all of the applications within ten weeks. Id. In other words, the plaintiffs sought (in their individual claims) only injunctive relief to compel actions that the INS had indisputably already taken by the time the plaintiffs moved for class certification. There was no Rule 68 offer (accepted or otherwise) at issue, and the Cruz court could say with confidence (and accuracy) that the named plaintiffs had "received complete relief" on their individual claims. Id. at 533.

In order to decide whether an unaccepted Rule 68 offer triggers mootness under Cruz, we must therefore first decide that a plaintiff who has refused such an offer has "received complete relief," such that there remains no individual case or controversy sufficient to satisfy Article III. All five circuit courts to have considered such an argument post-Genesis Healthcare have rejected

-12-

it.  See Hooks v. Landmark Indus., Inc., No. 14-20496, 2015 WL 4760253, at *3-4 (5th Cir. Aug. 12, 2015);  Chapman v. First Index, Inc., Nos. 14-2773 & 14-2775, 2015 WL 4652878, at *2-3 (7th Cir. Aug. 6, 2015); Tanasi v. New Alliance Bank, 786 F.3d 195, 199-200 (2d Cir. 2015), Stein v. Buccaneers Ltd. P'ship, 772 F.3d 698, 704-05 (11th Cir. 2014), Diaz v. First Am. Home Buyers Prot. Corp., 732 F.3d 948, 954-55 (9th Cir. 2013).  Six other circuits have either held,[6] assumed,[7] or expressly avoided deciding[8] that a Rule 68 offer of all relief requested can, at least sometimes, moot an individual

---

[6]  O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 574-75 (6th Cir. 2009); Samsung Elec. Co., Ltd. v. Rambus, Inc., 523 F.3d 1374, 1379-80 (Fed. Cir. 2008).

[7]  Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 371 (4th Cir. 2012) (stating that an offer of full relief moots a claim, but holding that the defendants' Rule 68 offer did not offer full relief because the plaintiff sought actual damages in an amount that had not been determined); Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 949 (8th Cir. 2012) (stating that, in a case involving the correction of a clerical error in a docket entry that dismissed the plaintiffs' claims as moot following the denial of class certification and a subsequent Rule 68 offer for full relief, judgment should be entered for a putative class representative upon a defendant's offer of full payment where class certification has been properly denied (citing Alpern v. Utilicorp United, Inc., 84 F.3d 1525, 1539 (8th Cir. 1996))); Weiss v. Regal Collections, 385 F.3d 337, 342 (3d Cir. 2004) (stating that a Rule 68 offer for full relief is generally sufficient to moot a plaintiff's individual claim, but holding that the case was not moot because the class claim survived through the relation back doctrine).

[8]  Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239, 1242-43, 1249-50 (10th Cir. 2011) (noting that a Rule 68 offer of full individual judgment "may" moot a case that is not a putative class action, but holding that the case it was deciding was not moot because an unaccepted Rule 68 offer cannot moot a putative class action before the court has had an opportunity to rule on the class certification motion).

claim.  In none of those circuits, however, did such a holding result in a putative class action being mooted.

Looking further at Genesis Healthcare, we see that the four dissenting justices expanded on the reasoning of Justice Rehnquist in his concurrence in Roper, 445 U.S. at 341-42 (Rehnquist, J., concurring), opining that a rejected Rule 68 offer does not moot a claim because the rule itself provides that an unaccepted offer is "considered withdrawn."  133 S. Ct. at 1534 (Kagan, J., dissenting) (quoting Fed. R. Civ. P. 68(b)).  Because the parties had agreed below that the individual claim was moot, the Genesis Healthcare majority expressly eschewed deciding whether an unaccepted Rule 68 offer moots a claim.[9]  Id. at 1528-29, 1532.

It remains to be seen whether a fifth justice will accept the reasoning of Justice Rehnquist and the Genesis Healthcare dissenters when the issue actually reaches the Court.  We may have an answer in less than a year.  See Campbell-Ewald Co. v. Gomez, 135 S. Ct. 2311, 2311 (2015) (No. 14-857) (granting petition for certiorari seeking review of the questions of whether a case becomes moot when a plaintiff receives an offer of complete relief on his claim, and whether the answer to that question differs in a

---

[9]  The Genesis Healthcare majority then went on to hold that if an individual plaintiff's claim in a Fair Labor Standards Act (FLSA) collective action becomes moot before any other employees have joined the collective action, the case becomes moot.  133 S. Ct. at 1533.  In so holding, the Court distinguished FLSA collective actions from class actions brought under Rule 23.  Id. at 1532.

-14-

putative class action); see also Petition for Writ of Certiorari, Campbell-Ewald, ___ U.S. ___, (No. 14-859), 2015 WL 241891, at *i (filed Jan. 16, 2015). In the interim, we agree with the Second, Fifth, Seventh, Ninth, and Eleventh Circuits that an unaccepted Rule 68 offer cannot, by itself, moot a plaintiff's claim. See Hooks, 2015 WL 4760253, at *3-4; Chapman, 2015 WL 4652878, at *2-3; Tanasi, 785 F.3d at 199-200; Stein, 772 F.3d at 704-05; Diaz, 732 F.3d at 954-55. We take this position because, when employed as ACT hopes to employ it here, an unaccepted Rule 68 offer is a red herring: it does not, in itself, provide any relief. And nothing in Rule 68--or any other rule--contemplates use of a rejected offer to secure dismissal of a case. To the contrary, Rule 68 expressly specifies what happens to a rejected offer: it is deemed to be "withdrawn," and it is "not admissible except in a proceeding to determine costs." Fed. R. Civ. P. 68(b).

Recognizing this hole in its Rule 68 argument, ACT suggests that the district court could close this hole by entering judgment for Bais Yaakov just as it would have had Bais Yaakov accepted the offer. ACT points to no rule that authorizes--much less requires--such a result. Certainly Rule 68 does not. Rather, the entire structure of the rule leaves it to the plaintiff to decide whether to accept the offer or risk having to pay "the costs incurred after the offer was made," even if the plaintiff wins the case. Fed. R. Civ. P. 68(d). The court's determination of "costs

incurred" requires no qualitative assessment of the claims, defenses, or evidence--it simply requires the court to compare the amount of the Rule 68 offer to the judgment the plaintiff actually obtained and determine which is more favorable. Id. ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."). Under ACT's view of Rule 68, however, a court will often have to make what in effect are qualitative assessments of the legal and factual merits of the claims, defenses, and evidence.

This very case provides a good illustration of the manner in which ACT's view of Rule 68 easily invites the qualitative assessment of the maximum available relief when a plaintiff rejects an offer, yet the defendant cites the making of the offer as proof of mootness. Bais Yaakov claims that ACT's offer was too small because it provided for only a single statutory award for each missing notice while Bais Yaakov seeks a statutory award for each required element of the notice that was not sent.[10] The offer therefore equaled far less than what Bais Yaakov claims a right to recover.

The rules make clear how a court resolves such a disagreement about the measure of damages under the applicable

---

[10] Bais Yaakov also claims that the offer did not fully satisfy its demand for class-wide injunctive relief and for relief under section 396-aa.

-16-

statutes:   a defendant could move to dismiss (or for partial summary judgment, or for judgment on the pleadings) on any claim for recovery above a single award for each missing notice.  <u>See</u> Fed. R. Civ. P. 12(b)(6), 12(c), 56.  In this case, ACT never filed such a motion.  Nor did it amend its offer, asserting on appeal (and after Bais Yaakov moved for class certification) only a willingness to re-extend it.  Instead, latching onto Rule 12(b)(1), ACT asked the court to find that it lacked subject matter jurisdiction by first finding that Bais Yaakov was wrong on the merits of its damage theory.  Were we to bless this approach, courts would find themselves ruling on the merits of claims under the guise of determining whether cases are moot.[11]   <u>See</u> <u>Scott</u> v. <u>Westlake Servs. LLC</u>, 740 F.3d 1124, 1127 (2014); <u>Payne</u>, 748 F.3d at 607-09; <u>Hrivnak</u> v. <u>NCO Portfolio Mgmt., Inc.</u>, 719 F.3d 564, 567-70 (6th Cir. 2013); <u>see also</u> <u>Town of Barnstable</u> v. <u>O'Connor</u>, 786 F.3d 130, 142-43 (1st Cir. 2015).

        The Supreme Court's analysis in <u>Lewis</u>, irrespective of what it means for <u>Roper</u>'s holding concerning attorney's fees, is not to the contrary on the issue of the effect of a Rule 68 offer. To assess whether a claim is moot, a court need first determine

---

[11]    ACT argues that whether or not such questions are merits determinations, Bais Yaakov has already lost on them and this court should simply review whether the district court's determination was correct.  We decline to do so because the parties' disagreement on this issue simply underscores the correctness of the district court's ruling that Bais Yaakov's case was not moot.

-17-

what the claimant seeks. In Lewis, the court did this by construing the complaint, over the claimant's objection, as seeking only a license for an FDIC-insured bank. 494 U.S. at 478-79. Once that construction was made, mootness followed because the plaintiff conceded that the law requiring the issuance of such a license had been reversed by amendment. Id. at 478. In short, the plaintiff conceded that it could not obtain that which the Court held the complaint sought. Here, by contrast, ACT asks that we find mootness by first engaging in a merits determination so as to construe the law to entitle Bais Yaakov to less than its pleadings seek to recover. And this would be a merits determination that post-dates the motion for class certification.

Nor does the Court's decision in Already, LLC v. Nike, Inc., 133 S. Ct. 721 (2013), aid ACT in arguing that we should address the merits of Bais Yaakov's damages theory under the guise of adjudicating mootness. ACT points to Already as an example of the Court declaring a suit moot when the plaintiff wanted to keep litigating. However, in that case the Court simply held that any dispute concerning Already's current products was mooted by a covenant that Already agreed immunized those products from future trademark infringement claims, and that Already lacked standing to continue litigating to secure a declaratory judgment protecting future products because the need for such protection was speculative to the point of being fanciful. Id. at 729-30. Here,

there is no doubt that Bais Yaakov has standing as a fax recipient to seek statutory damages.  The dispute concerning the sufficiency of the offer concerns, instead, the merits issue of the controlling measure of damages.

ACT also points to <u>Overseas Military Sales Corp., Ltd.</u> v. <u>Giralt-Armada</u>, 503 F.3d 12 (1st Cir. 2007), for the premise that a claim may be moot in this circuit despite the plaintiff's desire to keep litigating.  That case, however, presented us with a binding, non-revoked admission of full liability for everything the plaintiff sought, plus the agreement of the plaintiff that its position of the merits was no broader than that which was conceded.  There was thus no need for us to say anything at all about the merits of the parties' agreed upon position.  Here, by contrast, we have a withdrawn offer and an argument about whether the offer covered all that was sought.

Of course, in rejecting ACT's stratagem we cannot claim to have achieved any lasting equilibrium insulating class actions from pick-off attempts.  Other versions of the strategem will be employed.  <u>Cf.</u> <u>Chathas</u> v. <u>Local 134 IBEW</u>, 233 F.3d 508, 512 (7th Cir. 2000) ("[I]t is always open to a defendant to default and suffer judgment to be entered against him . . . .").  In many cases involving damages in a certain amount as the only remedy, delivery of a bank check might get around the infirmities in using a Rule 68 offer.  To parry these possible gambits, knowledgeable plaintiffs'

counsel will simply file motions for class certification with the complaint.  See, e.g., Damasco v. Clearwire Corp., 662 F.3d 891, 896 (7th Cir. 2011), overruled by Chapman, 2015 WL 4652878, at *3. In such a circumstance, however, it may be hard to see why a motion for class certification will save the day for class plaintiffs (a possibility Cruz expressly left open, see 252 F.3d at 534 n.3) if an express and detailed request for class certification in the complaint does not.[12]  It may be, in sum, that if substance is to prevail over form, and consumer class actions are not to be largely eviscerated, the Supreme Court will need to decide that a plaintiff's request to proceed as a class representative pressing the real claims of those to be represented is a claim for relief that precludes a finding of mootness.[13]  See Stein, 772 F.3d at 707.

---

[12]  The Third Circuit has held that an offer of judgment to the named plaintiff cannot moot a class action because any eventual certification "relates back" to the date of the complaint.  Weiss, 385 F.3d at 347.  The Fifth Circuit, prior to its recent opinion in Hook, 2015 WL 4760253, held that a plaintiff must have actually moved for class certification by the time a mooting event occurs. Fontenot v. McGraw, 777 F.3d 741, 751 (5th Cir. 2015).  In doing so, it expressly noted that putative class representatives can prevent defendants from picking them off by simply filing a motion for class certification along with the complaint.  Id. at 751.

[13]  Certainly there are many abuses of Rule 23.  Indeed the author of this opinion has expressed concerns about allowing such an action to proceed when not all class members have been injured.  In re Nexium Antitrust Litig., 777 F.3d 9, 32-37 (1st Cir. 2015) (Kayatta, J., dissenting).  But as the Court suggested in Roper, 445 U.S. at 339, there are other ways to address concerns regarding inappropriate uses of Rule 23.

### III.  Conclusion

Until the Supreme Court addresses the whole issue of class action pick-offs more comprehensively, resolving <u>Roper</u>'s continuing validity and the correctness of the Rule 68 analysis by the dissenters in <u>Genesis Healthcare</u>, uncertainty will reign.  In the meantime, we hold that ACT's unaccepted and withdrawn Rule 68 offer did not moot this litigation because Bais Yaakov has not "received complete relief."  We therefore <u>affirm</u> the district court's denial of ACT's motion to dismiss for lack of jurisdiction.