## CARROLL SHELBY LICENSING, INC., Shelby American, Inc., Carroll Shelby

### and

### Ford Motor Company

### v.

## SUPERFORMANCE INT'L., INC. d/b/a Superformance Complete Replicars

### No. CIV.A.00–12581–RWZ.

United States District Court, D. Massachusetts.

Aug. 21, 2002.

See also 2002 WL 31936483.

Darrell L. Olson, Lynda Zadra-Symes, John W. Holcomb, Valerie L. Bracken, Knobbe Martens Olson & Bear LLP, Irvine, CA, Gregory A. Madera, Kurt Glitzenstein, Fish & Richardson P.C., Boston, MA, for Superformance International.

Todd Cronan, R. David Hosp, Goodwin Proctor LLP, Boston, MA, M. Neil Cummings, M. Neil Cummings & Associates, Los Angeles, CA, for Carroll Shelby Licensing, Inc., Shelby American, Inc. and Carroll Shelby.

Stephen McKenna, Danielle B. Lemack, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, for Ford Motor Company.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Carroll Shelby ("Shelby") designed the original Cobra during the 1960s. Shortly thereafter, Ford Motor Company ("Ford") registered several Cobra marks for use with its marketing and sales of automobiles and auto parts. By the late 1970s, dozens of companies had begun to advertise, manufacture and sell Cobra replicas. One such company, defendant Superformance Int'l., Inc. ("SPF"), began to sell a "rolling chassis" in 1996, identical to the Cobra shape, often with Cobra emblem badges. These rolling chassis are manufactured in South Africa by SPF's parent company, Hi Tech Automotive of Port Elizabeth ("Hi Tech"). Shelby filed suit against SPF in 2000. The Complaint alleges Trademark Infringement, Trade Dress Infringement, Trademark Counterfeiting, Federal and State Trademark Dilution, Unfair Competition, and Violation of Import Statutes. Ford then intervened as a plaintiff, alleging Trademark Infringement, Unfair Competition, Counterfeiting, and Dilution. This Court set a discovery deadline of June 7, 2002, shortly after which time a deluge of dispositive motions ensued, including:

- Shelby Plaintiffs' Motion for Partial Summary Judgment on Count I (Trademark Infringement) of Its Amended Complaint
- Ford Motor Company's Motion for Summary Judgment (as to all counts)
- Defendant's Motion for Partial Summary Judgment of the Counterfeiting Claims by Plaintiff Ford Motor Company
- Defendant's Motion for Partial Summary Judgment of the Trade Dress Claims (in Count II–VI) by Plaintiffs Carroll Shelby; Carroll Shelby Licensing Inc.; and Shelby American, Inc.

■ Trademark and trade dress law is complex and constantly evolving. Here, the difficulties inherent in this type of a case are exacerbated by a voluminous and convoluted factual record. Both Ford and Shelby ask this Court to rule in their favor on the issue of trademark infringement. The record, however, is replete with disputed material facts on crucial issues including the validity of Ford's registration of the Cobra marks, the status of Shelby's ownership rights, abandonment, genericness, and the likelihood of confusion. For example, it is unclear when and if Shelby stopped selling or licensing cars with the Cobra shape. Equally unclear is whether the replica industry has rendered the Cobra name generic in the eyes of consumers. In addition, Superformance raises questions of fact with respect to Shelby's prior testimony in a 1992 California case against Ford, and the effect of that testimony, if any, on Ford's position. These are but a few of the disputed material facts that render summary judgment inappropriate on the Ford and Shelby motions for summary judgment.

SPF's dispositive motions, however, stand on a different footing. After a careful review of current trade dress infringement and trade mark counterfeiting case law, I am persuaded its motions for summary judgment should be allowed.

### Trade Dress Infringement

■ Shelby's claim, that SPF markets, imports and sells rolling chassis identical to the Cobra is undisputed. However, even conceding that SPF creates identical replicas, it argues that the law does not support Shelby's claim to exclusive trade dress rights in the Cobra design. In order to prove trade dress infringement and dilution, Shelby must show that the design is

(1) used in commerce, (2) nonfunctional, and (3) distinctive. *I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27, 36 (1st Cir.1998)("*Lund II*"). The Cobra design is plainly used in commerce, and is nonfunctional. Therefore, it is only the third element that requires discussion.

▮ The Supreme Court recently held that trade dress, in the form of a product's design (as opposed to packaging), can never be inherently distinctive as a matter of law. *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.,* 529 U.S. 205, 212, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). Rather, a design is distinctive and therefore protectable, only upon a showing of secondary meaning. *Id.* at 216, 120 S.Ct. 1339. The central inquiry for secondary meaning is whether, "in the minds of the relevant consumers, the primary significance of the [Cobra] design is to identify the source of the product," rather than the product itself. *I.P. Lund Trading ApS v. Kohler Co.,* 118 F.Supp.2d 92, 104 (2000)("*Lund III*"). In a product design case, there is a presumption that the design does *not* serve as a brand identifier. *Wal–Mart,* 529 U.S. at 212, 120 S.Ct. 1339. To rebut this presumption, Shelby must create an evidentiary basis for a finding that the source-identifying function has subordinated the design's aesthetic functions. *Lund III,* 118 F.Supp.2d at 108.

▮ Herein lies the initial question: who is the source of the Cobra design? This is a unique case in which Shelby appears to be the designer of the car in question, and Ford the producer. The term "source," however, must refer to the entity that actually uses the design as a product in commerce. *See Wal–Mart,* 529 U.S. at 209, 120 S.Ct. 1339 (section 43(a) of the Lanham Act, "gives a producer a cause of action for the use by any person of 'any word, term, name, symbol, or device'" which is likely to cause confusion as to the origin of his or her goods) (citing 15 U.S.C. § 1125(a)). Indeed, the *Wal–Mart* holding is based on basic tenets of competition in the marketplace and consumer choice. *See Id.* at 211, 120 S.Ct. 1339 ("Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by a rule of law that facilitates plausible threats of suit against new entrants based upon alleged inherent distinctiveness."). There can be no protection under trade dress principles for the designers themselves, who do not take an active role in the marketplace, and therefore do not impact competition and consumer choice. Design patents and copyrights are more appropriate forms of protection for those who cannot fulfill the initial "source" requirement of the secondary source inquiry.

Even if Shelby is able to prove that he is the source of the Cobra car (i.e. the producer), he has failed to present any evidence that consumers associate the Cobra design with Shelby, and Shelby alone as source. Proof of secondary meaning entails "vigorous evidentiary requirements." *Yankee Candle Co. v. Bridgewater Candle Co.,* 259 F.3d 25, 43 (1st Cir.2001). While secondary meaning may be established in a variety of ways, "consumer surveys and testimony are the only direct evidence on this question." *Boston Beer Co. v. Slesar Bros. Brewing Co.,* 9 F.3d 175, 180 (1st Cir.1993). Shelby has submitted survey evidence, compiled by Dr. Jessica Pollner ("Pollner"), a statistician of Pricewaterhouse Coopers LLC, who performed face-to-face interviews with sports-car hobbyists at one industry trade show. Although the survey establishes an association between the Cobra design and Shelby, that is insufficient to support a reasonable jury finding in Shelby's favor on the issue of secondary meaning. Rather, Shelby must prove that the primary significance of the Cobra shape in the minds of consumers is

to identify Shelby as the *single producer*. *See Wal–Mart*, 529 U.S. at 211, 120 S.Ct. 1339. He cannot.

The most troubling aspect of the report is Pollner's conclusory grouping of responses.[1] When asked if they recognized the picture of a Cobra design, Pollner reports that over 50% of the people surveyed associated the picture with "Shelby." Within this percentage, however, Pollner includes numerous different responses, such as "Cobra," "Shelby Cobra," and "Ford Shelby Cobra." By grouping these responses into one "Shelby" category, Pollner herself assumes the answer to the very question at issue. Not only are Pollner's conclusions illogical in a very basic sense, but they are also completely unreliable and bear no weight on Shelby's secondary meaning argument. Circumstantial evidence in this case is equally unavailing.

■ Because Shelby is unable to establish that the Cobra shape is distinctive, his dilution claims also fail as a matter of law. As the First Circuit stated in *Lund II*, 163 F.3d at 47, "[t]he mere acquisition of secondary meaning to achieve trademark status as a noninherently distinctive designation is nowhere near sufficient to achieve the status in a 'famous mark' under the anti-dilution statute." *Id.* (quoting J. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 24:91 (4th ed.1996)). "In other words, a trademark can be distinctive without being famous, but it cannot be famous without being distinctive." J. Gilson, *Trademark Protec-*

*tion and Practice*, 5.12[1][c][ii] (1998). Accordingly, summary judgment in SPF's favor is appropriate on Shelby's trade dress infringement and dilution claims.

### Trade Mark Counterfeiting

■ In order to prove counterfeiting under § 32 of the Lanham Act, Ford must show that SPF used a counterfeit mark in its sale of goods in commerce. 15 U.S.C. §§ 1114(1)(a) and 1117(b). SPF argues that Ford cannot support this claim as a matter of law because "a claim for trademark counterfeiting lies only against counterfeit uses of a mark on the same goods or services as are covered by the plaintiff's registration of that mark." *Playboy Enters., Inc. v. Universal Tel–A–Talk Inc.*, 1998 U.S. Dist. LEXIS 8231, at *13, 48 U.S.P. Q.2d 1779, 1782 (E.D.Pa.). Whereas Ford's registration covers "passenger automobiles," SPF uses the mark in connection with its manufacturing of "rolling chassis."[2] In essence, a rolling chassis is a car body—everything but the engine and transmission. These items can be purchased separately, either from SPF or other manufacturers, and installed into the rolling chassis. Ford's response, that a rolling chassis is the equivalent of a passenger automobile, as described in Ford's registration, is not supported by the facts. For example, Ford's in-house counsel, Daniel M. Stock, Esq. ("Stock"), testified that a rolling chassis is considered generally a "vehicle" until an engine is installed, at which point it becomes a passenger

1. SPF's expert, Jacob Jacoby, Ph.D ("Jacoby"), expresses similar concerns in his analysis of the Pollner survey.

2. SPF's motion requests summary judgment on all thirteen of the trademark registrations referenced by Ford's counterfeiting claim. However, a footnote to Ford's response states that for the purposes of SPF's motion "Ford will limit its counterfeiting argument to Reg. No. 807,185, because it is clearly undisputed

that SPF's actions violate the Trademark Counterfeiting Act with respect to this registration." Ford's failure to address the other twelve registrations or to set forth facts that contradict those contained in SPF's motion, appears to be a tacit acknowledgment that there are no genuine issues of material facts as to them. Therefore, the court accepts the facts set forth in SPF's motion as undisputed. Summary judgment as to these remaining twelve registrations is allowed as well.

"automobile." Rolling chassis, testified Stock, are merely *components* of passenger automobiles. Ford tries to rescue its claim by pointing out that, as such, rolling chassis are encompassed by the term passenger vehicle. Not so. According to the registration renewal of Reg. No. 807, 185, Ford removed the words "rolling chassis" from the description of goods covered by its registration. Although the old registration included passenger vehicles and "components thereof namely, bodies, chassis and bumpers," the new registration merely covers "passenger automobiles." If Ford intended to preserve its rights over passenger automobile components, it should not have taken active steps to eliminate them from its registration.

Finally, Ford's counterfeit claims are difficult to justify in light of its continuing endorsement of SPF"s rolling chassis. Even after filing a complaint against SPF, a 2002 Ford racing parts catalog features the "Superformance Cobra Kit Car," complete with Ford engine. The caption reads "PUT A FORD IN YOUR FORD." In response, Ford states that its employees have no authority to sponsor or endorse SPF products on behalf of Ford. At oral argument, however, Ford conceded that its Office of General Counsel has been aware of the 2002 catalog endorsement for months, yet has failed to take any measures to pull the ad from publication. Based on all of these facts, no reasonable juror could find in favor of Ford on its counterfeiting claim.

Accordingly, Superformance's Motion for Partial Summary Judgment Dismissing the Counterfeiting Claims of Plaintiff Ford Motor Company and Motion for Partial Summary Judgment Dismissing the Trade Dress Claims (in Count II–VI) of Plaintiffs Carroll Shelby; Carroll Shelby Licensing Inc.; and Shelby American, Inc. are ALLOWED.

Shelby Plaintiffs' Motion for Partial Summary Judgment on Count I (Trademark Infringement) of Its Amended Complaint, and Ford Motor Company's Motion for Summary Judgment are DENIED.