# United States Court of Appeals
## For the First Circuit

No. 05-1307

CARROLL SHELBY ET AL.,

Plaintiffs, Appellants,

v.

SUPERFORMANCE INTERNATIONAL, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Selya, Lipez and Howard, Circuit Judges.

R. David Hosp, with whom R. Todd Cronan, Mark S. Puzella, and Goodwin Procter LLP were on brief, for appellants.
Steven E. Snow, with whom Randall T. Weeks, Jr., Robert K. Taylor, and Partridge Snow & Hahn LLP were on brief, for Shell Valley Companies, Inc., International Automobile Enterprises, Inc., B & B Manufacturing, Inc., Backdraft Racing, Inc., and Unique Motorcars, L.L.C., amici curiae.

January 18, 2006

**SELYA**, **Circuit Judge**. The appellants, Carroll Shelby, Shelby American, Inc., and Carroll Shelby Licensing, Inc. (collectively, Shelby), cloak this appeal in the raiment of trade-dress law. That masquerade ignores the central question of mootness (an issue that Shelby attempted to obscure in its appellate filings). For the reasons that follow, we conclude that Shelby's appeal must be dismissed and that vacation of the decision below is unwarranted.

The predicate facts are straightforward. In the 1960s, Shelby manufactured and sold the Shelby Cobra 427 S/C. After the initial commercial production of the automobile had run its course, a Cobra replica industry emerged. Defendant-appellee Superformance International, Inc. is a player in that industry. It markets, imports, and sells the Superformance 427 S/C — a rolling chassis identical in design to the Shelby Cobra 427 S/C.[1] Superformance uses the same mark (427 S/C) and emblem badges (Cobra) on its replicas as Shelby used on the originals.

In late 2000, Shelby commenced a civil action against Superformance in the United States District Court for the District of Massachusetts. Its complaint contained a host of trademark- and trade-dress-based claims premised on theories of infringement,

_____

[1]A rolling chassis is essentially a car body without an engine or a transmission.

counterfeiting, dilution, unfair competition, and the like.[2] Superformance answered the complaint and filed counterclaims. After a great deal of skirmishing, not relevant here, the district court granted Superformance's motion for partial summary judgment on Shelby's trade-dress claims (comprising parts of five of the seven counts contained in Shelby's amended complaint). Carroll Shelby Licensing, Inc. v. Superformance Int'l, Inc., 251 F. Supp. 2d 983, 988 (D. Mass. 2002).

The court's decision focused on the issue of secondary meaning — a showing necessary to Shelby's success on the trade-dress-related claims. See id. at 986. Although Shelby submitted survey evidence of secondary meaning, the district court deemed that evidence "insufficient to support a reasonable jury finding in Shelby's favor on the issue." Id. Since the court also determined that the proffered circumstantial evidence was "equally unavailing" to show secondary meaning, it entered summary judgment in favor of Superformance. Id. at 987. That was not a final order, however, as district court proceedings continued on the remaining trademark claims and on Superformance's counterclaims.

On December 17, 2004, Shelby moved for final judgment by consent, a permanent injunction, and vacation of the partial

---

[2]Ford Motor Co., which had partnered with Shelby in the original venture, later intervened as a plaintiff in this action, alleging its own trademark claims against Superformance. Since Ford is not a party to this appeal, the evolution of those claims need not be traced here.

summary judgment order. Shelby informed the district court that the consent judgment was "an integral part of a global settlement of all matters in dispute between the parties" and represented that it had entered into a license agreement with Superformance for the trade-dress rights associated with the Shelby Cobra 427 S/C. Importuning the court to vacate its earlier decree, Shelby explained that the consent judgment would "facilitate a new business relationship between the parties, which now encompasses the trade dress issues that [were] the subject of the [summary judgment] order."

The district court entered the proffered consent judgment and permanent injunction. At the same time, the court denied Shelby's motion to vacate the summary judgment order. Shelby filed a timely appeal "from the final judgment entered in this action." Its notice of appeal singled out the summary judgment order, but did not mention the denial of the motion to vacate.

In its appellate brief, Shelby followed the same path. It frontally challenged the merits of the summary judgment order, arguing that the district court erred by (i) not conducting an analysis of indirect evidence of secondary meaning (which, if properly evaluated, would have raised a genuine issue of material fact as to secondary meaning) and (ii) rejecting the survey evidence (which, if properly evaluated, also would have sufficed to raise a genuine issue of material fact as to secondary meaning).

Shelby made a passing reference to the consent judgment in its jurisdictional statement but did not mention its settlement with Superformance in either its statement of facts or in the argument section of its brief. It made no allusion whatever to the denial of its motion to vacate the partial summary judgment order.

Superformance elected not to file a brief. Fortunately, however, several manufacturers and sellers of kit cars sought leave to file an amicus brief. We allowed their motion on August 26, 2005, and subsequently granted them permission to argue orally.

The amicus brief brought the parties' settlement and the denial of the motion to vacate to the forefront for the first time. The amici suggested that we should dismiss the appeal as moot and that, notwithstanding the dismissal, the summary judgment order should remain intact. Despite the fact that the amicus brief was filed well in advance of oral argument, Shelby eschewed the filing of a reply brief and did not address the issue of mootness until the panel began asking questions about it at oral argument. As we explain below, that was too little and too late.

At the risk of belaboring the obvious, we begin our discussion of the issues by noting that all of Shelby's arguments concerning mootness and its effects seem to have been waived. A notice of appeal must specify the order appealed from. See Fed. R. App. P. 3(c)(1)(B) (requiring that a notice of appeal "designate the judgment, order, or part thereof being appealed"). Here, even

though the district court explicitly denied a motion to vacate the partial summary judgment, Shelby did not frame its appeal as a challenge, in whole or in part, to that order.  A party's failure to designate a particular order for appeal ordinarily defeats a later attempt to dispute that order in the court of appeals.  See, e.g., Smith v. Barry, 502 U.S. 244, 248 (1992); Lehman v. Revolution Portfolio, LLC, 166 F.3d 389, 395 (1st Cir. 1999).  Shelby offers no plausible reason why we should not apply that principle here.[3]

Even had Shelby forthrightly addressed the point, we nevertheless would dismiss this appeal as moot and decline to direct the lower court to vacate its summary judgment order.  We explain briefly.

A federal court's jurisdiction is constitutionally restricted to the resolution of actual cases or controversies.  See U.S. Const. art. III, § 2, cl. 1; see also Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990); Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001).  "A case generally becomes moot when the controversy is no longer 'live' or the parties 'lack a legal[ly]

---

[3]Shelby's appellate brief contains nary a syllable about the district court's denial of the motion to vacate, nor does it confront the issue of mootness.  It took direct questioning by this court to elicit Shelby's views about mootness and the related issue of vacatur.  That will not do: on appeal, "a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (citations and internal quotation marks omitted).

cognizable interest in the outcome.'" Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 64 (1st Cir. 2002) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam)). It is, therefore, clear beyond hope of contradiction that a global settlement moots an action between the settling parties arising out of the same subject matter. See, e.g., Lake Coal Co. v. Roberts & Schaefer Co., 474 U.S. 120, 120 (1985) (per curiam); Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004).

Shelby contests the applicability of this abecedarian tenet on the ground that its settlement with Superformance addressed only trademark issues and, thus, left extant a live controversy as to trade dress. Shelby's representations to the district court belie that contention.

In its motion for entry of judgment by consent, Shelby described a "global settlement of all matters in dispute" and acknowledged that it had granted a license to Superformance that "include[d] the trade dress rights in the Shelby Cobra 427 S/C automobile." Based on these unequivocal statements — the settlement agreement itself is not part of the record — we have no reason to doubt that there has been a resolution of all the controverted issues between the parties. Not only are the parties no longer adversaries in this case, but their interests are now fully aligned: Superformance, as the licensee of Shelby's trade-dress rights, has as much interest in protecting those rights as

-7-

does Shelby itself.  It comes as no surprise, therefore, that Superformance elected not to defend the summary judgment order before this court.  By any measure, this appeal is moot.  See Aqua Marine Supply v. AIM Machining, Inc., 247 F.3d 1216, 1219-20 (Fed. Cir. 2001) (concluding that in a patent infringement action an appeal is moot when the appellee no longer has an interest in defending the judgment of invalidity that it obtained below).

That is not the end of the matter.  Shelby seeks vacation of the partial summary judgment order and, even though we must dismiss this appeal as moot, we retain jurisdiction to decide the question of vacatur.  U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 21 (1994).  We turn to that question.

The "principal condition" to which courts look when engaging the vacatur calculus is "whether the party seeking relief from the judgment below caused the mootness by voluntary action." Id. at 24.  Vacatur is ordinarily appropriate when mootness results from vagarious circumstance or the unilateral act of the prevailing party.  Id. at 25.  When mootness stems from a settlement, however, the presumption is different.  In that situation, "the losing party has . . . surrender[ed its] claim to the equitable remedy of vacatur.  The judgment is not unreviewable, but simply unreviewed by [the losing party's] own choice."  Id.  The presumption, therefore, is that the judgment previously obtained should remain intact.  See id.

That presumption comes into play here. By entering a global settlement with Superformance, Shelby (the summary judgment loser) relinquished any claim to vacatur as of right.

Of course, the U.S. Bancorp presumptions are not ironclad, and exceptional circumstances may justify different results. See id. at 29. In this instance, Shelby maintains that the presumption against vacatur is rebutted by the equities. In elaboration, it first contends that allowing the summary judgment to stand will have an institutionally detrimental impact because the district court's holding is in conflict with trade-dress law.

That is resupinate reasoning. It invites us to reach the merits of the order in question and adopt the settling party's unopposed view of them. That disingenuous invitation seriously distorts the U.S. Bancorp standard, and we decline to accept it. See Aqua Marine, 247 F.3d at 1221.

Shelby also argues that the terms of the settlement agreement preserve its right to appeal from the district court's summary judgment order. Because Shelby has not produced the settlement agreement, that argument asks us to take on faith a matter dehors the record. In all events, even if Shelby's depiction of the settlement is accurate, the reservation of a right of appeal does not constitute an exceptional circumstance sufficient to justify vacation of an underlying judgment. After all, if the "fact that the settlement agreement provides for

vacatur" does not constitute an exceptional circumstance, U.S. Bancorp, 513 U.S. at 29, the fact that the agreement includes a right of appeal cannot conceivably be entitled to greater deference.

If more were needed — and we are confident that it is not — we emphasize that vacatur is an equitable remedy. See, e.g., id. at 25. In constructing that balance, Shelby's actions weigh heavily against it. As recounted above, Shelby omitted any mention of its unsuccessful motion to vacate the summary judgment order in its appellate filings, effectively obscured the import of the settlement agreement in those filings, and never acknowledged that the issue of mootness hovered like a dark cloud over this appeal. Courts ought not to reward a party's evasiveness by granting it relief that it does not deserve. We will not do so here.

We need go no further.[4] For the reasons elucidated above, we dismiss this appeal as moot and leave intact the district court's partial summary judgment order.

**Dismissed.**

---

[4]We wish to thank the amici and their counsel for their helpful participation in these proceedings.