# United States Court of Appeals
## For the First Circuit

No. 05-2859

OVERSEAS MILITARY SALES CORPORATION, LTD.,

Plaintiff, Appellant,

v.

NOEMA GIRALT-ARMADA, in her capacity as
Secretary of the Department of Consumer Affairs of the
Commonwealth of Puerto Rico; ERNESTO NIEVES-NIEVES,

Defendants, Appellees.

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]
[Hon. Camille L. Vélez-Rivé, U.S. Magistrate Judge]

Before

Torruella and Lipez, Circuit Judges,
and DiClerico, Jr.* District Judge.

Jesús E. Cuza Abdala, with whom Linda M. Reck and Greenberg
Traurig, PA, were on brief for appellant.

September 14, 2007

_____

* Of the District of New Hampshire, sitting by designation.

**LIPEZ, Circuit Judge**. Appellant Overseas Military Sales Corporation, Ltd. ("OMSC"), a government contractor operating at Fort Buchanan, Puerto Rico, seeks reversal of the district court's order dismissing its complaint for declaratory and injunctive relief to prevent the Department of Consumer Affairs of the Commonwealth of Puerto Rico ("DACO") from enforcing Puerto Rico's consumer protection law against it. This appeal is unopposed. In fact, the Commonwealth of Puerto Rico concedes that the position taken by OMSC is correct. Nevertheless, OMSC urges us to decide this case and to issue a fully reasoned opinion reaching the merits of its claim. We decline to do so. In light of the Commonwealth's concession, this case has become moot. We therefore dismiss this appeal and vacate the district court's judgment.

## I.

Appellant OMSC serves as an intermediary through which authorized customers working on U.S. military bases may purchase automobiles from manufacturers that have contracted with the United States Army and Air Force Exchange Service ("AAFES").[1] Under this arrangement, OMSC administers the AAFES vehicle program, accepting orders from authorized customers and relaying them to the manufacturers. This case arises from a dispute between OMSC and

---

[1] As defined by the United States Department of Defense, an authorized purchaser must be: (1) validly authorized by the military to purchase through AAFES; and (2) assigned overseas for thirty days or more on active or reserve duty, or be a retired service member.

Ernesto Nieves-Nieves, who purchased an automobile from OMSC at Fort Buchanan in Puerto Rico. All relevant parties stipulated before the district court that Fort Buchanan is a federal enclave under the exclusive legislative jurisdiction of the United States government.

On March 18, 2004, Nieves filed an administrative complaint against OMSC with DACO, alleging that the vehicle he had purchased from OMSC was defective. DACO has the authority to adjudicate consumer disputes under Puerto Rico law and may refer complaints to other Puerto Rico agencies or to the federal government. P.R. Laws Ann. tit. 3, §§ 341i-1, 341n.

Before DACO took action on Nieves's complaint, OMSC filed a suit in federal district court in August 2004 seeking declaratory and injunctive relief against Nieves and Noema Giralt-Armada, in her capacity as Secretary of DACO. OMSC argued that the federal enclave doctrine barred DACO from adjudicating Nieves's complaint and that Giralt-Armada had violated that doctrine by allowing Nieves's complaint (and others like it) to be brought before DACO.

The federal enclave doctrine provides that "[t]he Congress shall have Power . . . [t]o exercise exclusive Legislation in all Cases whatsoever, over . . . all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const. art. I, § 8, cl. 17. In

-3-

addition, a provision in Article IV states in relevant part: "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." Id., art. IV, § 3, cl. 2. Accordingly, OMSC argued that neither Puerto Rico's consumer protection laws nor DACO's authority to resolve disputes under that law applied to consumer complaints arising from activities at Fort Buchanan – including any complaints against OMSC. OMSC filed an emergency request for a preliminary injunction to prevent Nieves from proceeding with his particular claim and to bar DACO from exercising jurisdiction over OMSC in any further complaints against it.

The district court referred the matter to a magistrate judge. After an evidentiary hearing, the magistrate judge recommended denying the preliminary injunction for three reasons. First, she found that the court lacked subject matter jurisdiction over the claim under the Rooker-Feldman doctrine.[2] Second, she found OMSC's claim barred by principles of claim and issue preclusion. Finally, she found that, even if the court could consider OMSC's petition, OMSC was unlikely to succeed on the merits of its claim. See Esso Std. Oil Co. v. Monroig-Zayas, 445

---

[2] The Rooker-Feldman doctrine bars a plaintiff who lost in state court proceedings from "implicitly or explicitly . . . seeking an opposite result . . . [in] the lower federal courts." Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 24 (1st Cir. 2005).

F.3d 13, 17-18 (1st Cir. 2006). The magistrate judge based this assessment on her view that the federal enclave doctrine permitted the application of state law to activities on federal enclaves except where federal and state law conflict. The magistrate judge found no conflict between federal and state law in this instance.

The district court subsequently issued a decision adopting the magistrate judge's report and recommendation in its entirety and denying OMSC's motion for a preliminary injunction.[3] Less than a month later, the district court sua sponte entered an order dismissing the entire case "for the reasons stated in [its prior] Opinion and Order." OMSC timely filed this appeal, challenging the order dismissing the case.

Two months after OMSC filed its brief in this court, the parties filed a joint motion informing the court that they had settled the case. The settlement agreement explained that the parties had agreed to "abide by the Agreed Opinion and Order attached to this Settlement Agreement . . . as though it were properly and duly issued by the United States Court of Appeals for the First Circuit." It also explained that:

> The Parties agree that the Agreed Opinion and Order . . . shall have preclusive effect under the doctrines of res judicata, collateral estoppel, issue preclusion, and/or the Rooker-

---

[3] The magistrate judge had also recommended that the court enter a final default judgment against Nieves, who had failed to submit an answer or to take part in any of the proceedings; the district court declined to do so.

> Feldman doctrine as to all issues described therein. The Parties agree that any and all decisions, opinions, or judgments entered in the [district court's opinion and order] shall not have any preclusive effect under the doctrines of res judicata, collateral estoppel, and/or issue preclusion, and the Parties have agreed to voluntarily set aside all decisions, opinions and judgments entered in the [district court's opinion and order].

The settlement agreement also made it clear that settlement was conditional on this court's approval:

> The Parties will jointly request that this Settlement Agreement be approved by the United States Court of Appeals for the First Circuit. To ensure the enforcement of this Settlement Agreement, the Parties will further request the United States Court of Appeals for the First Circuit to issue the injunction order attached as Exhibit 'B'. The parties agree and understand that an injunction order by the United States Court of Appeals for the First Circuit shall have preclusive effect under the doctrines of res judicata, collateral estoppel, and/or issue preclusion. Should the United States Court of Appeals for the First Circuit decide not to approve this Settlement Agreement or deny the Parties' request that it enter the order attached to this Settlement Agreement as Exhibit 'B,' <u>the Parties will continue with the Appeal until the United States Court of Appeals for the First Circuit rules on the merits of the Appeal</u>.

(Emphasis added). An eleven-page proposed order discussing and confirming the merits of OMSC's claims was attached as "Exhibit A" and a one-page injunction order permanently enjoining DACO from exercising jurisdiction over OMSC's operations within Fort Buchanan was attached as "Exhibit B."

We did not approve the settlement agreement or the attached orders. Our order denying the joint motion explained:

> [T]heir settlement agreement, if approved by this Court, would effectively reverse the judgment of the district court. Generally, we are not at liberty to vacate the judgment of the district court on the basis of a settlement, let alone to reverse it. See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 115 S. Ct. 386, 393-94 (1994) (vacatur is generally not justified when "the party seeking relief from the judgment below caused the mootness by voluntary action" in settling the case).

The order went on to state: "Our denial is without prejudice to the parties' requesting vacatur of the district court judgment by filing in the district court a joint motion pursuant to Fed. R. Civ. P. 60(b) in an effort to preserve settlement." Instead of pursuing this suggested course of action in the district court, OMSC chose to continue with its appeal in the hope of obtaining from us a decision on the merits that mirrored the decision that it had asked us to adopt on the basis of its settlement with the Secretary.

Shortly thereafter – and in response to an order alerting appellees that they would not be heard at oral argument because they had failed to timely file a brief – Giralt-Armada submitted an informative motion explaining this failure: "[G]iven that appellee has attempted to settle this case and, indeed, concedes that appellant's arguments are correct as a matter of law, it is unnecessary to file our brief in the instant case." Three days

before we heard oral argument in this case, the new Secretary of the Department of Consumer Affairs, Alejandro García Padilla, filed an urgent informative motion reiterating appellees' position that "appellant's arguments on appeal [are] correct as a matter of law" and noting that, while appellees would not take part in oral argument, they would attend in order to answer any questions we might pose.  Indeed, Puerto Rico's Solicitor General appeared at oral argument to confirm his agreement with OMSC's arguments.

**II.**

**A.  Mootness**

In continuing with this appeal after we rejected their proposed settlement agreement, the parties overlooked the doctrine of mootness.  However, even though neither party raised this issue, we must inquire sua sponte whether an appeal has been rendered moot by subsequent events. See North Carolina v. Rice, 404 U.S. 244, 246 (1971).

Article III of the Constitution restricts federal courts to the resolution of actual cases and controversies.  See U.S. Const. art. III, § 2, cl. 1; see also Shelby v. Superperformance Int'l, Inc., 435 F.3d 42, 45 (1st Cir. 2006).  The case or controversy requirement ensures that courts do not render advisory opinions.  Put another way, "those words limit the business of federal courts to questions presented in an adversary context." See Flast v. Cohen, 392 U.S. 83, 95 (1968).  We have previously

held that a "case is moot . . . when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome." Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001). See also Black's Law Dictionary 1025 (7th ed. 1999) (defining "mootness doctrine" as "[t]he principle that American courts will not decide moot cases – that is, cases in which there is no longer any actual controversy"). In these circumstances, a "case or controversy ceases to exist, and dismissal of the action is compulsory." Cruz, 252 F.3d at 533. The controversy between OMSC and appellees expired when OMSC conceded that "appellant's arguments on appeal were correct as a matter of law." Given that the issues presented in the initial appeal are "no longer live," we conclude that OMSC's appeal is moot.[4]

## B.  Vacating the Judgment Below

A series of Supreme Court cases describes the conditions under which vacatur is appropriate when a case has become moot – and therefore nonjusticiable[5] – after an appeal has been filed. A

---

[4] Nieves's continued status as a defendant in this case and his failure to join in the Commonwealth of Puerto Rico's concession that OMSC is correct as a matter of law is irrelevant to our mootness analysis. Although he initiated the original claim against OMSC before DACO from which this case arises, Nieves took no further action before either the district court or this court. His non-participation cannot provide the "concrete dispute between adversaries" upon which our jurisdiction depends. Neely v. Benefits Review Bd., 139 F.3d 276, 279 (1st Cir. 1998).

[5] Mootness is one of several grounds rendering a case nonjusticiable. See, e.g., Renne v. Geary, 501 U.S. 312, 320-21 (1991) (explaining that "[j]usticiability concerns not only the

"pivotal" consideration in determining whether to "disturb prior judgments in a case rendered nonjusticiable" is whether the party seeking such relief caused the nonjusticiability through its voluntary action. Anderson v. Green, 513 U.S. 557, 560 (1995) (per curiam). Where a settlement occurs, see U.S. Bancorp, 513 U.S. at 21, or the losing party declines to pursue an appeal, Karcher v. May, 484 U.S. 72, 83 (1987), no vacatur is appropriate. This is so because, "[w]here mootness results from settlement, . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." U.S. Bancorp, 513 U.S. at 25. In such cases, the "judgment is not unreviewable, but simply unreviewed by [the losing party's] own choice." Id.; see also Karcher, 484 U.S. at 83. Although OMSC entered into a settlement agreement with the Commonwealth of Puerto Rico, that agreement was conditioned upon our approval. When we rejected that settlement, OMSC continued with its appeal. Hence, OMSC is not before us as a party who has settled and seeks reversal of a judgment below on that basis.

---

standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention," requiring an inquiry into both mootness and ripeness).

Vacatur is an appropriate remedy for parties in OMSC's position. As the Supreme Court has explained, "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment. The same is true when mootness results from unilateral action of the party who prevailed below." U.S. Bancorp, 513 U.S. at 25 (citations and footnote omitted). Here, that unilateral action takes the form of the decision by the Commonwealth – the prevailing party below – to reject its victory in the trial court and acquiesce in the position taken by OMSC on appeal.

Although OMSC is entitled to vacatur of the judgment below, we refuse to go further and reverse the lower court's judgment on the merits. Such a request "invites us to reach the merits of the order in question and adopt the [appellant's] unopposed view of them." Shelby, 435 F.3d at 46. As we have previously explained, such an "invitation seriously distorts the U.S. Bancorp standard, and we decline to accept it." Id.

We understand that the vacatur of the district court's judgment represents only a partial victory for OMSC, which wanted not only vacatur of the district court's judgment but also a decision from us on the merits that would have preclusive effect. However, as described above, we can only render such decisions in

-11-

the context of a live controversy.  We do not have such a controversy here.

Accordingly, we dismiss the appeal, vacate the judgment of the district court and remand to the district court for dismissal of the complaint.  See United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft, 239 U.S. 466, 478 (1916) ("[T]he ends of justice exact that the judgment below should not be permitted to stand when without any fault of the Government there is no power to review it upon the merits.").  No costs are awarded.

**So Ordered.**