# United States Court of Appeals
## For the First Circuit

No. 22-1740

NANCY ROE, as parent and natural guardian of A.R., and
individually; AMY MARANVILLE, as parent and natural guardian of
P.M., and individually; MARIA POPOVA, as parent and natural
guardian of S.P., and individually,

Plaintiffs, Appellants,

v.

MAURA TRACY HEALEY, in her official capacity as Governor;
MASSACHUSETTS DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION;
BROOKLINE PUBLIC SCHOOLS; SOMERVILLE PUBLIC SCHOOLS; WELLESLEY
PUBLIC SCHOOLS; JEFFREY C. RILEY, in his official capacity as
Commissioner of Education; DR. LINUS J. GUILLORY, JR., in his
official capacity as Superintendent of Brookline Public Schools;
MARY E. SKIPPER, in her official capacity as Superintendent of
Somerville Public Schools; DR. DAVID LUSSIER, in his official
capacity as Superintendent of Wellesley Public Schools,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Kayatta, Selya, and Howard,
Circuit Judges.

Rory J. Bellantoni, with whom Brain Injury Rights Group, Ltd.
was on brief, for appellants.
Cassandra Bolaños, Assistant Attorney General, with whom
Andrea Joy Campbell, Attorney General of Massachusetts, was on
brief, for appellees Maura Tracy Healey, Massachusetts Department

of Elementary and Secondary Education, and Jeffrey C. Riley.

Joshua R. Coleman, with whom Murphy, Lamere & Murphy, P.C., was on brief, for appellees Somerville Public Schools and Mary E. Skipper.

John M. Simon and Stoneman, Chandler & Miller, LLP on brief for appellees Brookline Public Schools and Dr. Linus J. Guillory, Jr.

Adam Simms and Pierce Davis & Perritano LLP on brief for appellees Wellesley Public Schools and Dr. David Lussier.

Francisco M. Negrón, Jr., John Foskett, and Valerio, Dominello & Hillman LLC, on brief for amici curiae National School Boards Association, Maine School Boards Association, Massachusetts Association of School Committees, and Rhode Island Association of School Committees.

---

August 14, 2023

---

**KAYATTA**, <u>Circuit Judge</u>. Three children with disabilities and their parents sued the Governor of Massachusetts, the Commissioner of Schools for Massachusetts, the Massachusetts Department of Elementary and Secondary Education (DESE), and several school districts and their superintendents on behalf of a putative class, over the closure of in-person education due to the COVID-19 pandemic. Plaintiffs claim that the closure deprived the children of the free appropriate public education to which they are entitled, and deprived the parents of their right to participate in their children's education. They ask for various forms of compensatory and prospective relief. We conclude that none of their claims are cognizable in federal court at this time. Our reasoning follows.

**I.**

**A.**

We begin by providing some background on the federal legal landscape surrounding public education of children with disabilities. The Individuals with Disabilities Education Act (IDEA) "provides federal funds to assist states in educating children with disabilities 'and conditions such funding upon a State's compliance with extensive goals and procedures.'" <u>Parent/Professional Advocacy League</u> v. <u>City of Springfield</u>, 934 F.3d 13, 19 (1st Cir. 2019) (quoting <u>Arlington Cent. Sch. Dist. Bd. of Educ.</u> v. <u>Murphy</u>, 548 U.S. 291, 295 (2006)). To receive

- 3 -

such funding, states must agree to guarantee to all children with disabilities a free and appropriate public education (commonly referred to as a FAPE). 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)(A). A FAPE encompasses both "special education and related services." Id. § 1401(9). The delivery of a FAPE is primarily accomplished through the promulgation of individualized education programs (IEPs). Id. § 1414(d). A student's IEP is designed by an IEP team, which includes parents, teachers, and a representative of the local educational agency. Id. § 1414(d)(1)(B). The IDEA specifies the process for identifying qualified students and creating IEPs for those students. Id. § 1414(a)-(d).

The IDEA also requires states to establish certain procedural safeguards, which ensure that students and parents receive the rights guaranteed under the IDEA. Id. §§ 1412(a)(6), 1415. These procedures must include opportunities for parents to participate as part of the IEP team, written notice to parents when an educational agency proposes changes to the IEP, and procedures for complaints to be filed and due process hearings to take place. Id. § 1415(b). Under the IDEA's so-called "stay put" provision, a student must remain in his or her current placement pending resolution of administrative or judicial proceedings under the IDEA. Id. § 1415(j). Parents must exhaust their state-provided remedies before filing a lawsuit in federal court alleging a violation of the IDEA. Id. § 1415(i)(2)(A). Parents must also

exhaust their administrative remedies before filing a lawsuit under other statutes that protect the rights of children with disabilities if the relief sought is available under the IDEA. Id. § 1415(*l*).

In Massachusetts, the DESE is responsible for overseeing local education authorities and ensuring compliance with the IDEA. The local education authorities directly responsible for the delivery of a FAPE are the school districts. Parents' procedural rights are protected through processes enumerated in 603 Mass. Code Regs. § 28.08. Parents may file a formal complaint and seek a due process hearing before the Bureau of Special Education Appeals (BSEA). Id. § 28.08(3). The final decision of a BSEA hearing officer is subject to judicial review. Id. § 28.08(6).

Certain remedies are available to redress violations of the IDEA. Courts and hearing officers may award relief including compensatory education and reimbursement of educational expenses, both of which are considered equitable remedies under the IDEA. See Pihl v. Mass. Dep't of Educ., 9 F.3d 184, 188-89 (1st Cir. 1993); Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 19 (1st Cir. 2006). Compensatory education consists of "future special education and related services to ensure or remedy a past denial of a FAPE." Doucette v. Georgetown Pub. Schs., 936 F.3d 16, 32 (1st Cir. 2019). Reimbursement of educational expenses is limited to money spent by parents "for education-related expenditures that

- 5 -

the state ought to have borne." Id. at 32. Such reimbursements are distinct from "damages." Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 370-71 (1985); Doucette, 936 F.3d at 32. In contrast, tort-like general damages are not available under the IDEA. See Luna Perez v. Sturgis Pub. Schs., 143 S. Ct. 859, 864 (2023); Diaz-Fonseca, 451 F.3d at 19.

**B.**

**1.**

We turn now to the background of this particular lawsuit. In March 2020, COVID-19 upended nearly every aspect of life, including education. Schools across the country shuttered their doors and substituted virtual instruction for in-person learning. Massachusetts schools were no different. Governor Baker declared a state of emergency due to COVID-19 on March 10, 2020. He then ordered all public schools to close for in-person education on March 15, 2020. Subsequent orders extended the statewide school closures through the end of the 2019-2020 school year. While schools were physically closed, students attended school from home, receiving virtual instruction and services.

During the 2020-2021 school year, Massachusetts school districts offered a variety of remote and hybrid learning models, with hybrid and in-person options becoming available as the year went on. By May 2021, all public schools in the Commonwealth had returned to in-person instruction. On May 27,2021, the DESE

commissioner announced that for the 2021–2022 school year, schools would not "be able to offer remote learning as a standard model." The next day, on May 28, 2021, Governor Baker ended the state of emergency pursuant to which he had issued emergency COVID-19 orders.

**2.**

Parent plaintiffs Nancy Roe, Maria Popova, and Amy Maranville all have children who qualified for services under the IDEA. Each child had an IEP that outlined specific services and goals to meet the child's particular needs. Plaintiff A.R. has an emotional impairment and requires vocational skills consultations, academic support consultations, social-emotional support consultations, and direct academic support as part of her education.[1] Plaintiff P.M. has autism and requires direct, special academic instruction, speech-language therapy, and social skills services as part of his education.[2] Plaintiff S.P. has a health impairment and requires direct accommodations and special academic instruction as part of his education.[3] Although each student plaintiff's IEP specified the services the student must receive,

---

[1]  A.R. graduated from Brookline Public Schools in June 2022.

[2]  P.M. withdrew from Somerville Public Schools on or about August 12, 2022, after the parties had briefed the motion to dismiss below.

[3]  S.P. graduated from Wellesley Public Schools in June 2021.

no IEP addressed whether those services must be provided in person or whether they could be provided remotely (even though at least one IEP for each student was created during the pandemic). Plaintiffs allege, however, that the students "necessitate in-person services including occupational therapy, speech therapy, social work services, and resource room services."

The complaint further alleges that each plaintiff received "virtual instruction and services" during the later months of the 2019-2020 school year, and for some part of the 2020-2021 school year. A.R. "attended school at home with virtual instruction and services until March of 2021," when she was able to access a hybrid option; P.M. attended school at home until April 2021, when he was able to access a hybrid option; and S.P. attended school at home until October 2020, when he was able to access a hybrid option. The complaint does not allege that any student plaintiff was still attending school at home when the suit was filed in October 2021.

**3.**

Plaintiffs assert that when Governor Baker,[4] the DESE, and its commissioner (the state defendants), along with the Brookline, Somerville, and Wellesley Public Schools and their superintendents (the school defendants) switched schools to remote

_____

[4] Governor Healey has since been substituted as a defendant pursuant to Federal Rule of Appellate Procedure 43(c)(2).

instruction in response to the COVID-19 pandemic, they violated plaintiffs' rights under the IDEA. In particular, plaintiffs allege that the institution of remote learning "altered [student plaintiffs'] IEP[s] for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents." They claim that these alterations were procedurally defective because they occurred without notice and lasted too long, and because school defendants failed to ensure that parents were included as members of IEP teams and failed to reconvene IEP team meetings. As a result, the complaint states, defendants "[f]ailed to ensure that [student plaintiffs] could access a free and appropriate public education on the same level as [their] non-disabled peers." This allegedly harmed student plaintiffs, who suffered "regressions in skills and loss of competencies regarding the goals and objectives outlined in their IEPs." State defendants, plaintiffs claim, failed to adequately supervise school defendants as required under the IDEA. The complaint also asserts that defendants violated Massachusetts' Special Education Regulations, 603 Mass. Code Regs. §§ 28.00 et seq., for the same reasons.

The complaint further alleges that defendants illegally discriminated against plaintiffs on the basis of disability in violation of section 504 of the Rehabilitation Act, the Americans with Disabilities Act (ADA), and both the substantive due process

and equal protection guarantees of the Fourteenth Amendment (as enforced via 42 U.S.C. § 1983). Finally, in what may be fairly described as zealous overreach, it alleges that defendants acted as an enterprise and committed mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) by falsely assuring the United States Department of Education (DOE) that they were complying with the IDEA, and by receiving IDEA funds when they were violating the statute.[5]

Plaintiffs ask for a smorgasbord of relief to redress the many violations they recount in their complaint. First, they want the court to declare that the students' proper educational placement is in-person learning and to enjoin defendants from changing their placement for more than ten days (i.e., from closing schools again). Next, plaintiffs request retrospective compensatory relief, including a special master to evaluate each child and recommend compensatory education and what they call "pendency funds."[6] Plaintiffs also seek declaratory judgments that

---

[5] A district court in the Southern District of New York described similar RICO claims as "reek[ing] of bad faith and contrivance." J.T. v. de Blasio, 500 F. Supp. 3d 137, 172 (S.D.N.Y. 2020).

[6] It is not clear what plaintiffs mean by "pendency funds." Other courts have interpreted the term to refer to tuition reimbursement or funding to support an IEP placement. See J.T., 500 F. Supp. 3d at 181; Simpson-Vlach v. Mich. Dep't of Educ., No. 22-1724, 2023 WL 3347497 at *5 n.4 (6th Cir. May 10, 2023). But none of the named plaintiffs claim to have spent any money to support an educational placement due to defendants' actions. Nor do plaintiffs make any argument that the "pendency fund" remedy is

- 10 -

defendants violated all of the statutes under which they bring claims. Finally, plaintiffs ask for nominal and punitive damages.

Defendants moved to dismiss the complaint, arguing that plaintiffs do not have standing; that their challenges are moot; that they failed to exhaust their remedies under the IDEA as required before bringing claims in federal court; and that their non-IDEA counts fail to state claims on which relief can be granted. Plaintiffs opposed the motion, and reiterated a request they had made for a preliminary injunction.

## C.

The district court granted defendants' motion to dismiss and denied plaintiffs' request for a preliminary injunction. Addressing the injunction first, the district court rejected the idea that the switch to virtual learning constituted a change in the students' educational placement, finding that a system-wide change that applied to all students (not just disabled students) did not constitute a change in placement. It also noted the widespread pandemic impacts on other institutions, and the DOE's guidance indicating that the provision of FAPE may include remote instruction. Finally, although it did not refer to standing

---

meant to function as "[t]ort-like money damages," which in any case are unavailable under the IDEA. Diaz-Fonseca, 451 F.3d at 31 (quoting Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 124 (1st Cir. 2003)). Absent any other clues, we treat this request for that relief as part and parcel with plaintiffs' request of compensatory education.

- 11 -

explicitly, the district court referenced the requirement recently reiterated in TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2210 (2021), that plaintiffs can seek injunctive relief only "so long as the risk of harm is sufficiently imminent and substantial." The district court noted that there were no indications that defendants would close schools again, since schools had been providing full-time in-person instruction in the 2021–2022 school year.

Turning to the motion to dismiss, the district court found that plaintiffs were required to exhaust all of their "FAPE-related" claims (including claims under the IDEA, the associated Massachusetts regulations, section 504, the ADA, and section 1983) before bringing suit, which they had not done. Assuming without deciding that exceptions to the exhaustion requirement might be available, it further found that the exceptions would not apply because plaintiffs had failed to allege a system-wide violation (since the school closures did not change placements and so did not constitute a violation), and because plaintiffs did not qualify for any other kind of extraordinary exception.

The district court also concluded that plaintiffs had failed to state a claim under section 504, the ADA, and section 1983, because they had failed to allege animus or conscience-shocking conduct. Finally, it held that plaintiffs had failed to state a RICO claim because (1) they could not have

deceived the DOE when their actions comported with DOE guidance, and (2) there was no causal link between defendants' statements to the DOE and the denial of a FAPE -- essentially, the alleged fraud perpetrated on the government was not the act that caused plaintiffs' harm. Plaintiffs timely appealed.

## II.

We review the grant of a motion to dismiss de novo. Union of Concerned Scientists v. Wheeler, 954 F.3d 11, 16 (1st Cir. 2020). In so doing, we "assum[e] that all pleaded facts and reasonable inferences drawn from them are true." Id.

Plaintiffs argue that the district court erred by dismissing their claims and denying their request for a preliminary injunction. Because a final judgment has been entered, the denial of their request for a preliminary injunction has merged with the judgment and become moot. See Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 191 n.6 (1st Cir. 2022); Capriole v. Uber Techs., Inc., 991 F.3d 339, 343 (1st Cir. 2021). So, we consider only the challenge to the final judgment dismissing all claims and denying final injunctive relief. In so doing, we begin with plaintiffs' request for prospective declaratory and final injunctive relief under the IDEA. We next address plaintiffs' claims for retrospective relief under the IDEA and associated Massachusetts regulations, section 504, the ADA, and the Fourteenth Amendment. Finally, we conclude by addressing plaintiffs' RICO claim.

- 13 -

**A.**

Plaintiffs argue that defendants violated their procedural rights under the IDEA and its associated Massachusetts regulations[7] when they ordered and implemented remote schooling in March 2020. This switch, they assert, constituted a change in educational placement, which required notice and a convening of IEP teams that did not occur. Plaintiffs claim that they are entitled to an injunction requiring the students to "stay put" in their current educational placement, which they insist is in-person learning (and request a court order so declaring).

Defendants dispute that they violated the IDEA, but claim in any event that plaintiffs do not have standing to seek prospective declaratory relief or an injunction prohibiting school closures, and that any such challenge is moot. We address these arguments in turn.

**1.**

In order to bring a lawsuit in federal court, plaintiffs must have standing; that is, "plaintiff[s] must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by

---

[7] Because plaintiffs claim that the defendants' conduct violated the same requirements under both the IDEA and the implementing Massachusetts regulations, see 603 Mass. Code Regs § 28.01, our analysis of the IDEA claims also covers the associated claims for violations of 603 Mass. Code Regs § 28.08.

the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion, 141 S. Ct. at 2203 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). "An inquiry into standing must be based on the facts as they existed when the action was commenced." Ramírez v. Sánchez Ramos, 438 F.3d 92, 97 (1st Cir. 2006). As the Supreme Court recently emphasized, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." TransUnion, 141 S. Ct. at 2208.

"[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." Id. at 2210. The Supreme Court has explained that this standard is satisfied "if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409, 414 & n.5) (2013)). A threatened harm that is too attenuated or too speculative does not provide standing to seek an injunction. Clapper, 568 U.S. at 410; see also TransUnion, 141 S. Ct. at 2212 (finding that "plaintiffs did not factually establish a sufficient risk of future harm to support Article III standing" because the risk that misleading credit information would be disseminated to third parties was too speculative).

In a similar vein, past harm does not confer standing to seek forward-looking declaratory or injunctive relief unless there is ongoing injury or a sufficient threat that the injury will recur. See Efreom v. McKee, 46 F.4th 9, 21-22 (1st Cir. 2021); City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (rejecting the argument that Lyons might have standing based on past harm from being choked by police, because "[a]bsent a sufficient likelihood that he will again be wronged in a similar way, Lyons [was] no more entitled to an injunction than any other citizen of Los Angeles").

Defendants argue that plaintiffs do not face a real or imminent threat of being switched to remote instruction again, particularly because the executive orders closing schools expired in June 2020, all schools were providing in-person instruction by May 2021, Massachusetts's state of emergency lapsed in June 2021, and the restrictions that were imposed during the emergency have been rescinded. Plaintiffs maintain that they have shown a likelihood of future harm because "COVID-19 remains ever-present, with the imminent possibility of further variants" and they "seek a guarantee that [in-person education] will continue in the face of strikes, understaffing, or illness outbreaks." But merely invoking the possibility of these events is not enough to show that they are "certainly impending" or that there is a "substantial risk" they will occur. Plaintiffs plead no facts suggesting that

another school closure is imminent. See Simpson-Vlach v. Mich. Dep't of Educ., No. 22-1724, 2023 WL 3347497 at *4 (6th Cir. May 10, 2023) (holding that an allegation that schools could again close due to COVID-19 "is too general to establish that the threatened injury is 'certainly impending' rather than merely possible" (quoting Clapper, 568 U.S. at 409)). In our case, as in Simpson-Vlach, "the risk of future harm turns on a hypothetical sequence of events: that students would again switch to an extended period of remote instruction, that this switch would constitute a change in placement under their IEP, that the school would fail to follow the IDEA's procedural protections, and that these violations would cause harm in a similar manner." Id. Such a sequence is too attenuated to support a claim that future injury is certainly impending, or that there is a substantial risk it will occur. Thus, plaintiffs' alleged past injury cannot support standing to seek an injunction against future harm. Nor can the request for forward-looking declaratory relief survive the absence of any live case or controversy. See California v. Texas, 141 S. Ct. 2104, 2115-16 (2021).

## 2.

We consider next an independent reason for dismissing plaintiffs' requests for forward-looking declaratory relief decreeing that student plaintiffs' proper placement is in person, and for injunctive relief prohibiting a switch to remote learning.

The requests are moot because defendant school districts have returned to in-person learning, no plaintiff is now enrolled in any of the three defendant school districts, and no exceptions to the mootness doctrine are applicable here.[8]

A claim for injunctive relief becomes "moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Am. Civil Liberties Union of Mass. v. U.S. Conf. of Cath. Bishops (ACLU of Mass.), 705 F.3d 44, 52 (1st Cir. 2013) (quoting D.H.L. Assocs. v. O'Gorman, 199 F.3d 50, 54 (1st Cir. 1999)). "A party can have no legally cognizable interest in the outcome of a case if the court is not capable of providing any relief which will redress the alleged injury." Harris, 43 F.4th at 191 (quoting Gulf of Me. Fishermen's All. v. Daley, 292 F.3d 84, 88 (1st Cir. 2002)).

---

[8] It was not revealed until oral argument in this case that plaintiff P.M. had withdrawn from the Somerville Public Schools. Counsel for both sides represented that fact, with counsel for the school district filing a letter pursuant to Federal Rule of Appellate Procedure 28(j) after argument to confirm. But because "we have an 'independent obligation to examine [our] own jurisdiction,'" and because mootness raises a jurisdictional question, we may (and indeed, must) consider this argument nonetheless. Harris, 43 F.4th at 191 n.7 (alteration in original) (quoting FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990)). We therefore consider the mootness argument based on the status of plaintiffs' school enrollment, despite the late-breaking nature of that argument, along with defendants' earlier-raised mootness arguments regarding the withdrawal of the challenged policies implementing remote schooling.

- 18 -

That is the situation here, at least with respect to plaintiffs' claims for prospective declaratory and injunctive relief. Schools in Massachusetts have returned to in-person learning and plaintiffs concede that "students are now being educated in-person." Additionally, plaintiffs A.R. and S.P. have graduated from their respective school districts, and as the parties informed the court at oral argument, P.M. has withdrawn from the Somerville Public Schools.[9] "Thus, there is simply 'no ongoing conduct to enjoin' presently affecting [any] student." Id. at 192 (quoting Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 9 (1st Cir. 2021). These developments doom plaintiffs' request for prospective declaratory relief regarding pendency placements too. With the challenged policies no longer in effect, and no named plaintiff subject to any policy set by any defendant school district, a declaratory judgment would be purely advisory.[10]

This is not to say that the case as a whole is moot. Plaintiffs could still recover for past harm if their claims had

---

[9] No party has informed the court where P.M. is currently attending school; they have only noted that he no longer attends the Somerville Public Schools. Plaintiffs do not assert that P.M. is attending a different public school.

[10] The fact that plaintiffs' complaint is pled as a putative class action does not alter this result. Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001) (explaining that a putative class action "ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved").

- 19 -

merit. But that does not assist them with their request for injunctive and declaratory relief based on the possibility of future harm. See Town of Portsmouth v. Lewis, 813 F.3d 54, 58-60 (1st Cir. 2016) (finding that claims for declaratory and injunctive relief were moot, though the court acknowledged that claim for restitution might survive).

Nor can plaintiffs rely on any exception to the mootness doctrine to reanimate their requests for forward-looking relief. Courts may allow a claim to proceed if a plaintiff's claim has become moot, but the underlying type of event is "capable of repetition, yet evading review." See Harris, 43 F.4th at 194 (quoting Kingdomware Techs., Inc. v. United States, 579 U.S. 162, 170 (2016)). To fall within this exception, plaintiffs would have to show both that there is a "'reasonable expectation' or 'demonstrated probability' that [they] 'will again be subjected to the alleged illegality,'" id. at 195 (alteration in original) (emphasis omitted) (quoting ACLU of Mass., 705 F.3d at 57), and that "the types of claims they bring 'are inherently transitory,' or 'there is a realistic threat that no trial court ever will have enough time to decide the underlying issues (or, at least, to [certify a class]) before a named plaintiff's individual claim becomes moot,'" id. at 194 (alteration in original) (quoting Cruz v. Farquharson, 252 F.3d 530, 535 (1st Cir. 2001)). Plaintiffs cannot show either in this instance.

Plaintiffs assert that P.M. could move back into his former school district, which could perhaps be subject to another closure during P.M.'s tenure. Plaintiffs also argue more broadly that it is plausible that school closures will recur. But to escape a finding of mootness, review-avoiding repetition must be reasonably expected. Id. at 195 ("[A]voiding mootness cannot rest on 'speculation' about some future potential event." (quoting Pietrangelo v. Sununu, 15 F.4th 103, 106 (1st Cir. 2021))). Nothing in the record indicates either that P.M. expects to transfer back to the Somerville Public Schools, or that schools in Massachusetts can be reasonably expected to again switch to virtual learning. Nor do plaintiffs argue that their claims for prospective declaratory and injunctive relief are "inherently transitory" such that no court could ever address them in time with respect to any potential plaintiff.[11] Id. at 194 (quoting ACLU of Mass., 705 F.3d at 57). Plaintiffs' claims therefore do not fall into the mootness exception for those claims that are capable of repetition yet evade review.[12]

---

[11] As plaintiffs' counsel acknowledged at argument, in response to a question about whether plaintiffs' claim evades review, "it would have been better to bring [this case] sooner."

[12] Plaintiffs do not invoke by name the voluntary cessation exception to mootness, which allows claims that would otherwise be moot to proceed where "'a defendant voluntar[ily] ceases the challenged practice in order to moot the plaintiff's case and there exists a reasonable expectation that the challenged conduct will be repeated' after the suit's 'dismissal.'" Bos. Bit Labs, 11 F.4th at 9 (quoting Lewis, 813 F.3d at 59). In any event, for the

In sum, we hold that plaintiffs' requests for an injunction prohibiting a future switch to remote learning and a declaratory judgment that plaintiffs' proper placement is in person are not justiciable, both because plaintiffs lack standing to seek these remedies and because any dispute about whether schools should be prohibited from closing is moot. Plaintiffs' claims, to the extent they sought the aforementioned injunctive and declaratory relief aimed at adjudicating future events, were properly dismissed. See In re Evenflo Co., Inc. Mkting., Sales Pracs., & Products Liab. Litig., 54 F.4th 28, 41 (1st Cir. 2022) (affirming dismissal on standing grounds for claims insofar as they requested injunctive relief).

**B.**

Having considered and rejected plaintiffs' claims for forward-looking injunctive and declaratory relief under the IDEA based on any assertion that schools might again close, we turn to their claims for relief based on alleged past violations of the IDEA and associated regulations, section 504, the ADA, and the Fourteenth Amendment (as enforced via section 1983). We conclude that these claims were properly dismissed because plaintiffs

---

same reasons that plaintiffs' claim is not reasonably likely to recur, they cannot show a "reasonable expectation that the challenged conduct will be repeated" to support this exception either. Id.

failed to exhaust their administrative remedies under the IDEA, as required, or their claims were otherwise lacking.

Parties who wish to sue for violation of the IDEA must first exhaust the IDEA's administrative remedies. See Rose v. Yeaw, 214 F.3d 206, 210 (1st Cir. 2000). The IDEA's exhaustion requirement applies not only to suits alleging violations of the IDEA itself, but also to "civil action[s] under [other] laws seeking relief that is also available under this chapter." 20 U.S.C. § 1415(*l*). Plaintiffs must therefore exhaust administrative remedies if they seek relief available under the IDEA -- that is, if plaintiffs allege denial of a FAPE and ask for a remedy the IDEA can provide -- even if their claims (like several of plaintiffs' here) are brought under other statutes. See Fry v. Napoleon Cmty. Schs., 580 U.S. 154, 165 (2017); Perez, 143 S. Ct. at 865.

Plaintiffs do not appear to contest the first necessary condition for invoking the exhaustion requirement, i.e., that all of their claims (even those brought under statutes other than the IDEA) are based on denial of a FAPE. They do argue that their non-IDEA claims have different elements and allege distinct injuries. But this is not the test for whether a claim alleges denial of a FAPE; rather, the court must "look to the substance, or gravamen, of the plaintiff's complaint" and determine whether it seeks relief for denial of a FAPE. Fry, 580 U.S. at 165. Where

- 23 -

a lawsuit "cannot be . . . isolated from the special education services guaranteed by the IDEA" -- that is, where the conduct alleged is unlawful only because it concerns the special rights and services guaranteed by the IDEA for education -- this condition is met. Parent/Professional Advocacy League, 934 F.3d at 26 (explaining that exhaustion is required where complaints allege "that discriminatory treatment resulted in the denial of an adequate education or in an inappropriate placement," or where "the effects of the isolation or separation were educational"). Plaintiffs do not argue that their lawsuit does not fall into this category; indeed, even the non-IDEA claims clearly are predicated upon a denial of a FAPE. Plaintiffs assert that the schools violated section 504, the ADA, and the Fourteenth Amendment by discriminating against the plaintiffs on the basis of their disabilities because those plaintiffs require in-person instruction in order to receive a FAPE. Moreover, the harm they allege -- regression and loss of competencies -- is directly attributed to defendants' alleged failure to provide the education plaintiffs say is required by the IDEA. Therefore, to the extent that the section 504, ADA, and section 1983 claims seek relief available under the IDEA (a question we will return to shortly), they were required to be administratively exhausted.

Plaintiffs do not claim to have exhausted their administrative pursuit of the remedies they seek. Plaintiffs

nevertheless argue that this failure to exhaust should be excused. Plaintiffs bear the burden of showing that any excuse to the exhaustion requirement applies. Rose, 214 F.3d. at 211. We address each of their claimed excuses in turn.

**1.**

First, plaintiffs argue that exhaustion would be futile. Our circuit has recognized a futility exception to the IDEA's exhaustion requirement where "(1) the plaintiff's injuries are not redressable through the administrative process, and (2) the administrative process would provide negligible benefit to the adjudicating court." Doucette, 936 F.3d at 31 (internal citations omitted). Relatedly, the Supreme Court in Perez recently held that § 1415(*l*) does not bar a lawsuit requesting under a different statute a remedy unavailable under the IDEA. 143 S. Ct. at 865 (explaining that when a plaintiff seeks relief under other federal statutes for conduct that violates the IDEA, the plaintiff need not exhaust "if the remedy a plaintiff seeks is not one IDEA provides").

Plaintiffs argue that some of the remedies they seek -- specifically, forward-looking declaratory and injunctive relief prohibiting defendants from requiring the students to participate in distance rather than in-person learning -- are unavailable under the IDEA and cannot be provided through the administrative

process.[13]  But, as we have explained, whether or not those claims need have been exhausted is of no moment because those claims independently fail for lack of standing and mootness.

**2.**

Plaintiffs also argue that they allege a so-called system-wide violation, for which exhaustion is not needed.  In Parent/Professional Advocacy League, we noted that "[o]ther circuits" have defined a "systemic" exception to the IDEA's exhaustion requirement, but we did not clarify whether such an exception was available in this circuit.  934 F.3d at 27.  Rather, we concluded that if such an exception was available, the

---

[13]  Plaintiffs made this argument in their briefs only as to their requests for prospective declaratory and injunctive relief, and did not make this argument as to any other form of relief.  We therefore do not consider this argument as to any other form of relief requested in their complaint. Plaintiffs' counsel asserted for the first time at oral argument that plaintiffs' claims for declaratory relief and nominal damages were excused from exhaustion because they were unavailable through the administrative process.  But these late-breaking arguments fall under the "familiar rule that, 'except in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived.'"  Conduragis v. Prospect Chartercare LLC, 909 F.3d 516, 518 n.2 (1st Cir. 2018) (quoting United States v. Pulido, 566 F.3d 52, 60 n.4 (1st Cir. 2009)).  We see no exceptional circumstances that warrant excusing that waiver here.  See id. Plaintiffs' late argument that it would be futile to seek compensatory education through the administrative process because plaintiffs could not obtain this remedy administratively once they turn twenty-one is deemed waived for the same reason.

plaintiffs there had not alleged a claim that fell within its contours.  Id. at 27-28.

Here, too, we conclude that even if such an exception is available, plaintiffs have not shown that they qualify for it.  In Parent/Professional Advocacy League, we cautioned that, assuming a systemic exception is available, for it to apply, "the alleged violations must be 'truly systemic . . . in the sense that the IDEA's basic goals are threatened on a systemwide basis.'"  Id. at 27 (omission in original) (quoting Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1305 (9th Cir. 1992)).  We then held that the claims before us in that case did not fall into such an exception because "[a] finding that one student with a certain type and degree of mental health disability should have been mainstreamed would not mean that another student with a different type, or even just a different degree, of mental health disability should have received the same services or been mainstreamed."  Id. at 27-28.

Plaintiffs contend that here, the school closures constituted a system-wide action that cannot be addressed through the administrative process.  To the extent this merely restates their futility argument, we explained above why that argument fails to show that they are excused from exhaustion.  And although plaintiffs purport to challenge a system-wide action, even courts that have recognized a systemic exception have cautioned that it

"is not met every time a plaintiff challenges centralized, uniform policies that affect all students within a school or school district." T.R. v. Sch. Dist. of Phila., 4 F.4th 179, 192 (3d Cir. 2021); see Hoeft, 967 F.2d at 1304-05. Rather, the exception applies where the challenged violation "ha[s] the practical effect of denying the plaintiffs a forum for their grievances," Hoeft, 967 F.2d at 1304, such as those that challenge the administrative process itself or the process for identifying children with disabilities, Parent/Professional Advocacy League, 934 F.3d at 27. Plaintiffs' claim here does not fall into this category. See Carmona v. N.J. Dep't of Educ., No. 21-18746, 2022 WL 3646629, at *5 (D.N.J. Aug. 23, 2022) (explaining that issues regarding notice, pendency placements, and IEP meetings as school districts and states responded to the pandemic "implicate individualized inquiries regarding the notice each School District Defendant provided, each student Plaintiff's particular IEP, and how each student Plaintiff's access to educational opportunities compared to that of their non-disabled peers in the same school district"); T.R., 4 F.4th at 193-94; Parent/Professional, 934 F.3d at 27-28. And although plaintiffs state in passing that their complaints would "overwhelm the administrative system," they do not develop this argument. We therefore conclude that plaintiffs have failed to show that they are entitled to a systemic exception to the

IDEA's exhaustion requirement, assuming without deciding that such an exception is available in this circuit.

### 3.

Finally, plaintiffs contend that administrative remedies would provide inadequate relief. This argument essentially mirrors their futility argument -- they assert only that an administrative officer cannot declare that students' pendency placement is in-person, nor could such an officer enjoin defendants from closing schools again. As with their futility claim, plaintiffs' request for this relief is not now justiciable by a federal court, so it cannot provide a basis for excusing exhaustion. And plaintiffs have not provided any other reason why administrative remedies would provide them inadequate relief.

\* \* \*

Plaintiffs' IDEA, section 504, ADA, and section 1983 claims were thus properly dismissed in full, either because plaintiffs lacked standing to request the relief sought, the claims were moot, and/or because they were required to exhaust administrative remedies and failed to do so. Our conclusions accord with those of other courts that have considered similar claims alleging violations of the same laws based on the switch to remote learning. See J.T. v. de Blasio, 500 F. Supp. 3d 137, 193-194 (S.D.N.Y. 2020); Bills v. Va. Dep't of Educ., 605 F. Supp. 3d

744, 753-54 (W.D. Va. 2022); Simmons v. Pritzker, No. 22-cv-0123, 2022 WL 7100611, at *5 (N.D. Ill. Oct. 12, 2022).

## C.

Finally, we turn to plaintiffs' RICO claim. As the district court aptly summarized, "[t]he thrust of plaintiffs' RICO claims is that [defendants] misrepresented to the USDOE that they provided plaintiffs with a FAPE in compliance with the IDEA, and received federal funds intended for plaintiffs' benefit through mail and wire fraud (the racketeering acts)." The district court concluded that this claim should be dismissed because there was no "causal link" between the denial of a FAPE and the alleged RICO predicate acts (the statements to the USDOE and receipt of funds).

Courts across the country have concluded that similarly situated plaintiffs (represented by the same counsel), alleging RICO claims based on receipt of federal funds while allegedly violating the IDEA by switching to remote education, failed to allege statutory standing under RICO because they failed to allege that the purported mail and wire fraud proximately caused their injuries. See J.T., 500 F. Supp. 3d at 166; Simpson-Vlach, 2023 WL 3347497, at *7-8; Bills, 605 F. Supp. 3d at 758; Simmons, 2022 WL 7100611, at *6; Carmona, 2022 WL 3646629, at *7. We find these analyses persuasive and conclude that plaintiffs have failed to demonstrate RICO standing.

RICO provides a cause of action for those "injured in [their] business or property by reason of" a violation of that statute. 18 U.S.C. § 1964(c). Plaintiffs must be able to show that the predicate acts alleged proximately caused the harm they suffered. Holmes v. Sec. Inv. Protection Corp., 503 U.S. 258, 268 (1992). Indirect or downstream harm does not establish statutory standing to pursue a RICO claim. Hemi Grp., LLC v. City of New York, 559 U.S. 1, 9-11 (2010).

We train our attention on three factors when assessing causation under RICO:

> (1) "concerns about proof" because "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors"; (2) "concerns about administrability and the avoidance of multiple recoveries"; and (3) "the societal interest in deterring illegal conduct and whether that interest would be served in a particular case." As to this third factor, "directly injured victims can generally be counted on to vindicate the law . . . without any of the problems attendant upon suits by plaintiffs injured more remotely."

Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd., 990 F.3d 31, 35-36 (1st Cir. 2021) (omission in original) (internal citations omitted).

These factors preclude finding causation in this case. First, there is clearly an independent factor that accounts for plaintiffs' alleged injury: the pandemic, and subsequent response

- 31 -

to the global health emergency, not the allegedly false certifications. See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 459 (2006) (no causation in part because "Ideal's lost sales could have resulted from factors other than petitioners' alleged acts of fraud"); Camelio v. Am. Fed'n., 137 F.3d 666, 670-71 (1st Cir. 1998) (no causation where predicate acts alleged "did not cause" loss of plaintiff's job or membership in union). In an opinion addressing a similar claim, the Sixth Circuit recently found that "defendants could have violated the procedural guarantees of the IDEA for many reasons that do not stem from the false assurances, and the plaintiffs' regression in skills could have resulted from 'factors other than [defendants'] alleged acts of fraud.'" Simpson-Vlach, 2023 WL 3347497, at *7 (alteration in original) (quoting Anza, 547 U.S. at 459). The presence of an intervening factor, and the resulting attenuation of the injury, makes it less likely that plaintiffs can meet the causation requirement for RICO standing.

Second, as the proximate victim of the alleged fraud, the United States would be the better party to sue were there fraud. See Anza, 547 U.S. at 460. Other courts have pointed to this as a reason why similar plaintiffs lacked RICO standing. See Simpson-Vlach, 2023 WL 3347497, at *7 ("The allegedly false assurances were made to the Department of Education, not to the plaintiffs, meaning that the federal government was the direct

victim, whereas the plaintiffs suffered only passed-on injuries."); J.T., 500 F. Supp. 3d at 166 ("[T]his alleged fraud was not perpetrated on Plaintiffs. Rather, the purported frauds targeted the United States . . . ."); Bills, 605 F. Supp. 3d at 758 ("Even taking Plaintiffs' allegations as true . . . [they] have, at most, alleged that Defendants committed fraud against the United States -- not against Plaintiffs.").

Third, as to the directness of the harm, the "scheme" plaintiffs allege -- false certifications to the DOE and subsequent receipt by the state and school districts of IDEA Part B funds -- did not directly target plaintiffs, nor did it directly result in denial of a FAPE. See J.T., 500 F. Supp. 3d at 166 (explaining that "the alleged frauds cannot form the basis for relief under the civil RICO statute in a case brought by disabled students and their parents, whose claim is that the children were not provided with a FAPE -- not that they (the Plaintiffs) were defrauded in any way"). Plaintiffs claim that if defendants had not committed the fraud, "the money sent to the School Districts would have gone toward providing a FAPE to the Students." But, as the district court recognized, the alleged fraud and failure to provide a FAPE cannot be so directly linked.

Plaintiffs cite Alix v. McKinsey & Co., Inc., 23 F.4th 196 (2d Cir. 2022), for the proposition that causation can be established where a fraud on the judiciary "or other governmental

entity" resulted in a resource going to someone less deserving. Setting aside that that case involved a fraud against a court and thus presented a different scenario, the wrongful conduct in Alix directly reduced the chance of the plaintiff getting a resource in what was meant to be a fair competition. Id. at 205-06. Here, plaintiffs were not competing for IDEA funds, so they did not lose anything by those funds being granted to their school districts in the way that the plaintiffs in Alix lost business and the opportunity to participate in a fair bid process as a direct result of fraud. Thus, that case does not assist them.

In sum, because plaintiffs failed to allege that their injury was proximately caused by alleged racketeering acts, they cannot maintain their RICO claim. Holmes, 503 U.S. at 276; see also Simpson-Vlach, 2023 WL 3347497, at *7-8. That claim too was properly dismissed by the district court. We do not address defendants' arguments that the RICO claim fails for other reasons as well.

**III.**

For the foregoing reasons, the district court's order dismissing plaintiffs' claims is affirmed.